Richard S. Heller, J.
This is a motion for permission to file a late claim pursuant to subdivision 5 of section 10 of the Court of Claims Act.
Under that provision of the statute, this court may, in its discretion, permit the filing of a claim within two years after the accrual thereof upon a showing by affidavit (1) that claimant had a reasonable excuse for his failure to file a notice of intention (2) that the State or its appropriate department had actual knowledge of the essential facts constituting the claim prior to the expiration of the time limited for the filing of the notice of intention. The statute contains the further provision that “No such application shall be granted if the court shall find that the state has been substantially prejudiced by the failure of the claimant to file such notice of intention within the time limited therefor.”
The State actively opposes this motion upon three grounds: ' 1. that the proposed claim does not state facts sufficient to constitute a cause of action; 2. that the moving papers do not affirmatively show that the State had actual knowledge of the essential facts constituting the claim prior to the time limited for filing the notice of intention; and 3. that the State has been substantially prejudiced by the failure to file a notice of intention within the time limited therefor.
It is an obvious prerequisite to the exercise of the court’s discretion that claimant show facts sufficient to constitute a cause of action. (Skakandy v. State of New York, 188 Misc. 214, affd. 274 App. Div. 153, affd. 298 N. Y. 886.)
The claim seeks recovery for personal injuries. On September 1, 1954 claimant suffered a compound fracture of his right index finger and was treated for the injury by his own physician. On September 10,1954 that physician had claimant admitted to the Delhi Hospital in Delhi, New York, where the physician diagnosed claimant’s illness as tetanus. Claimant’s physician thereupon undertook therapeutic treatment of the disease and *581 he did this by intraspinous administration of tetanus antitoxin manufactured and distributed by the Division of Laboratories and Research of the Department of Health of the State of New York. This intraspinous administration is alleged to have been made in reliance upon and in accordance with a circular published, printed and distributed by the Division of Laboratories and Research containing instructions and directions for the use of tetanus antitoxin serum and specifically recommending intraspinous administration. It is then alleged that this circular was carelessly and negligently prepared in that medical specialists in the treatment of tetanus did not regard intraspinous administration as safe and superior to other methods but recognized that such administration was unsafe, dangerous and improper. It is asserted that the circular was prepared and distributed to the medical profession with the knowledge and intention that members of the professional and general practitioners in particular would rely upon and act in accordance with the information contained therein.
As a result of this intraspinous administration of tetanus antitoxin, claimant suffered transverse myelitis and associated damage to his spinal cord and central nervous system causing complete and permanent paralysis and anaesthesia below the tenth dorsal vertebra leaving claimant without control of his physical and body functions below that point in his body.
For the purposes of this motion we must assume the truth of these allegations. (Buffington v. State of New York, 204 Misc. 217.) This is recognized in the affidavit submitted by the State. The State asserts that even if these allegations are true, the facts would not permit recovery by the claimant and in support thereof submits a copy of the circular stating that such a circular is enclosed with every package of serum distributed.
While the circular warns of danger in the use of the tetanus antitoxin, it unquestionably recommends intraspinous administration for it reads in part “ Therapeutic Treatment: The antitoxin may be administered intraspinously, intravenously, and intramuscularly. The intraspinous and the intravenous methods are generally recognized as far superior to the intramuscular for the initial injection. There is considerable difference of opinion as to which is the more effective route. On the basis of reports received on cases treated in the State, combined intravenous and intraspinous administration appears to possess an advantage.”
The circular also contains detailed instructions for intraspinous administration and indicates intraspinous administration should precede intravenous administration even where there *582 are indications for proceeding with great caution. The circular itself does not serve to establish that claimant has not stated a cause of action.
The State’s argument is that no liability can be asserted for the distribution to physicians and surgeons of an instrumentality of medical treatment developed by the medical profession and in common use by the profession. The State asserts that this court so held in Parker v. State of New York (201 Misc. 416, affd. 280 App. Div. 157, motion for leave to appeal denied 304 N. Y. 989) and Hidy v. State of New York (207 Misc. 207). Those cases do not stand for any such broad proposition as a matter of law.
Both cases dealt with the use of pooled blood plasma collected by the American Bed Cross and turned over to appropriate public health agencies for distribution following World War II. The Department of Health of the State of New York distributed the plasma which was used and resulted in homologous serum jaundice causing death which gave rise to each claim. The decisions were made only after full trial in which it was established that the dangers inherent in the use of blood plasma were widely known in the medical profession. In each case one basis of the claim was that the State had given no warning of the danger.
In each case the court held that where the Department of Health acted merely as a distribution agent of a product collected by the American Bed Cross and for which physicians were generally chargeable with knowledge of appropriate circumstances for use, no liability could attach for failure by the Department of Health to give further information or warning to the physician concerning the use of the product.
Obviously, the facts established on the trial of those cases were far different than the allegations in this case. There is no proof here as to the knowledge with which the physician is chargeable concerning the use of the tetanus antitoxin. A physician is chargeable with that reasonable degree of learning and skill ordinarily possessed by physicians and surgeons in the locality where he practices. (Pike v. Honsinger, 155 N. Y. 201.) Here the circular itself is clothed with the appearance of reflecting generally accepted medical practice.
The allegations are sufficient to state a cause of action. The manufacture and distribution of an article dangerous to human life and well being if improperly used, imposes an obligation to advise of the manner in which the article may be safely used. (Marcus v. Specific Pharmaceuticals, 82 N. Y. S. 2d 194.) Since the obligation to give advice exists it is a necessary corol *583 lary that such advice must be given with care. The fact that the instrumentality was distributed only to members of the medical profession for use by them cannot serve to insulate the manufacturer and distributor from liability to the patient as a matter of law. (Wechsler v. Hoffman-LaRoche, Inc., 198 Misc. 540.)
The injury occurred on September 10, 1954. Since that time claimant has been without the use of the lower portion of his body. On September 11,1954 he was transferred from the Delhi Hospital to the Mary Imogene Bassett Hospital in Cooperstown, New York, where he remained until November 1, 1954 when he was discharged to the New York State Reconstruction Hospital or Rehabilitation Center at West Haver straw, New York. He remained there until April 7, 1955 when he was returned to his home at Delancey, New York.
During that entire period claimant was unaware of the cause of his paraplegia or what treatment he had undergone. Although he requested this information from doctors and hospital officials where he was treated including the New York State Reconstruction Hospital, he did not obtain such information until after he had consulted his attorneys on February 10, 1956 and his attorneys completed an investigation on February 16, 1956.
The moving papers establish a reasonable excuse for the failure to file a notice of intention within the time prescribed therfor.
In seeking to meet the statutory requirement that claimant show that the State or its appropriate department had actual knowledge of the essential facts constituting the claim within the time for filing a notice of intention, the moving papers set forth that 1. the files of the Mary Imogene Bassett Hospital contain what purports to be a copy of a report to the Department of Health on the use of the serum, reaction thereto and other pertinent information 2. the claimant’s attending physician stated to claimant’s attorney that a full and complete report was made to the Department of Health immediately after the use of the serum.
On the return date of this motion, the State, by affidavit, denied that any full and complete report of the use of the serum and the results thereof was immediately made to the Department of Health. In support thereof, there was submitted the affidavit of the principal laboratory secretary in the Division of Laboratories and Research, who on the date of the affidavit, April 16,1956, was in charge of the receipt of any and all reports by the Division of Laboratories and Research on the use of *584 tetanus antitoxin. From an examination of her files, she states that no report of reaction following use of the antitoxin on the claimant has ever been received by the Division of Laboratories and Research.
Claimant’s attorney submitted a further affidavit setting forth correspondence with the Division of Laboratories and Research Avhich indicates that the files contained no record of any report of serum reaction following use on the claimant. The affidavit also sets forth that the motion was made in good faith in the belief that the report in question, apparently the same report as is requested in the circular itself, was made and that there was no delay in reporting the facts as soon as information was received that the division files did not contain such a report. This of course, is of no assistance to the claimant in meeting the statutory requirement.
Claimant was given leave to file further affidavits on this question of actual knowledge of the State within the time limited. Thereafter claimant’s attorney submitted a further affidavit setting forth that (a) a final summary of the claimant’s hospital chart at the Mary Imogene Bassett Hospital was forwarded to Dr. A. J. Janning at the New York State Reconstruction Hospital, West Haverstraw, N. Y. on October 18,1954; (b) an inter-agency referral form was forwarded with the final summary; (c) the final summary, copy of which is attached to the affidavit, sets forth the history of treatment and hospitalization from September 1, 1954; (d) this final summary was in the hands of the State less than 60 days after the cause of action accrued on September 10, 1954 and from November 1, 1954 to April 7, 1955, an appropriate agency of the State had complete custody and control of the claimant, of his treatment and all facts relating to his condition; (e) claimant’s attending physician stated that a full and complete report was made to the Department of Health immediately after the use thereof; (f) either a copy or the original of such a report is contained in the files of the Mary Imogene Bassett Hospital; (g) from November 1,1954 to April 7,1955 claimant was under the care of employees or agencies of the State and dependent upon them for advice and instructions; (h) claimant made efforts to ascertain the cause of his condition, from employees of the State but until February 17, 1956 following consultation with his attorney on February 10, 1956, claimant was unaware and uninformed of the diagnosis of his illness or the treatment which he had received.
*585 The circular itself refers to a report form for therapeutic use of the antitoxin and contains a request for each physician to send a complete record of every patient treated to the Division of Laboratories & Research. It is apparently this form or a copy thereof which claimant found in the files of the Mary Imogene Hospital.
Under the State Sanitary Code (ch. 2, reg. 1) tetanus is included in the term infectious, contagious or communicable disease as used in the Public Health Law and the State Sanitary Code. Every physician is required to report on such a disease with details as to the person affected, to the local health officer who in turn is required to report to the Department of Health.
The affidavit of the principal laboratory secretary of the Division of Laboratories and Research is insufficient to establish that the State did not have the actual knowledge required by the statute. That affidavit was made on April 16, 1956 and states that to that date no report of serum reaction suffered by this claimant had been received. Yet the affidavit of claimant’s attorney made on April 17,1956, establishes that he had advised the Department of Health and the Division of Laboratories and Research of the serum reaction in letters dated February 14 and February 22,1956 and the Department of Health had replied to those letters. Clearly then, the State may have actual knowledge of serum reaction where that knowledge is not apparent to or contained in the files of the principal laboratory secretary. (See Rugg v. State of New York, 278 App. Div. 216.)
The requirement of a showing of the State’s actual knowledge of the essential facts constituting the claim is closely related to the provision that no such application may be granted where the State has been substantially prejudiced by the failure to file the notice of intention. Here the claimant asserts that the extensive knowledge which the State had prevents any finding that there has been substantial prejudice.
The obvious reason for the requirement for showing actual knowledge is to establish that the State had notice and an opportunity to investigate. As indicated in Schroeder v. State of New York, (252 App. Div. 16, 19), if the claimant has the burden of showing absence of substantial prejudice “ it should rest lightly on his shoulders, for the State would have less difficulty in showing that it was prejudiced than the claimant would have in showing the contrary. ’ ’ The State has made no showing of just how it has been prejudiced by the failure to file a notice of intention.
*586 It cannot be said as a matter of law that the moving affidavits do not comply with the requirements of subdivision 5 of section 10 of the Court of Claims Act. The granting or denying of the application therefore rests in the discretion of this court. (Rugg v. State of New York, 303 N. Y. 361.)
Discretion is not simply a judge’s sense of moral right or what is just. (Matter of Bond, 251 App. Div. 651.) It is a liberty or privilege to decide and act in accordance with what is fair and equitable under the peculiar circumstances of the particular case guided by the spirit, principles and analogies of the law. (McMahon v. State of New York, 173 Misc. 1004, affd. 261 App. Div. 879.)
The circumstances of this case together with the purpose of the enactment of subdivision 5 of section 10 of the Court of Claims Act require that the claimant be allowed to file his claim.
The motion for the filing of the claim is granted and the claim should be filed and served upon the Attorney-General within 30 days from date of entry of order. An order may be submitted to that effect.
Claimant also asked that the requirement for printing of his claim be dispensed with. Rule 9 of the Rules of the Court of Claims formerly required that where the claim exceeded $500 the required copies were to be printed. Since December 12, 1949, however, rule 9 has provided that the original claim and copies thereof may be either typewritten or printed. The relief requested is therefore unnecessary under the Rules of the Court of Claims and is denied.