Frank S. Rossetti, J.
Claimant’s motion for discovery and inspection and defendant’s cross motion for dismissal of the subject claim, having been heard jointly, are both considered in this memorandum opinion.
The claim herein is basically for damages arising from the Department of State’s release of confidential information to claimant’s former employer, in violation of CPL 720.35.
On July 1, 1972 Donnie Davis was arrested for a felony, but was found eligible for youthful offender treatment and so adjudicated on November 28, 1972. Under CPL 720.35, all official records and papers relating to a youthful offender case are confidential and are not to be made available to anyone (other than an institution where the offender is committed or an appropriate probation department), except where specifically required or permitted by statute, or upon specific court authorization. Subsequently, on or about September 17, 1974, Mr. Davis was hired as a guard by the Burns Detective Agency (hereinafter "Burns”). Thereafter, by letter dated October 18, 1974, the State Division of Licenses notified Burns of claimant’s 1972 felony arrest. Said division was apparently acting pursuant to subdivision 6 of section 81 of the General Business Law, which requires the Secretary of State to compare the fingerprints of an employee of a licensed private detective or investigator with the Department of Correction’s division of criminal identification and to notify said employer of "any record affecting such prints”. Claimant was consequently fired by Burns on October 23, 1974.
On the same day he was fired, Mr. Davis applied for unemployment compensation. The Unemployment Insurance *599 Division of the State Labor Department was thereupon informed by Burns that claimant’s employment had been terminated for failing to make his arrest record known when he was hired. Said division, by an initial determination dated December 26, 1974, found this failure to be misconduct and denied Donnie Davis unemployment compensation. After a hearing held January 22, 1975 the aforesaid determination was apparently upheld. At said hearing claimant, for the first time, learned of the release of the confidential information by the Department of State. He then filed the instant claim on February 26, 1975.
With respect to the State’s dismissal motion, the grounds stated therefor are (1) lack of subject matter jurisdiction (CPLR 3211, subd [a], par 2), (2) failure to state a cause of action (CPLR 3211, subd [a], par 7) and (3) failure to timely file the claim (Court of Claims Act, § 10, subd 3). Apparently, grounds (1) and (2) include three distinct arguments. First, the act of releasing the confidential information was a quasi-judicial one as to which the State has not waived its sovereign immunity. Second, claimant should have brought an article 78 proceeding against the State Department to quash his arrest record prior to suing in the Court of Claims. Third, as to claimant’s loss of unemployment benefits, his remedy was an administrative appeal under article 18 of the Labor Law. The remaining ground, untimely filing, is premised on the contention the claim accrued when claimant was fired by Burns on October 23, 1974 and his claim should have been filed within 90 days thereafter.
We shall initially discuss untimely filing. Claimant argues his claim is timely filed first because it should be deemed (in the alternative) as one for breach of an implied contract by the State not to reveal confidential records and thus governed by the six-month filing provisions of subdivision 4 of section 10 of the Court of Claims Act. The facts alleged do not support such a contract, either implied in fact or in law. For an implied in fact contract, there must be circumstances from which the inference of an agreement can be drawn (see Davis v Caldwell, 1 AD2d 827). No such circumstances are disclosed here. The subject duty was a statutorily imposed one, not one agreed to by the parties. The fact a duty exists and is breached does not make a claim contractual since duty and breach are the essence of tort as well as contract actions. The nature and genesis of the duty determine the nature of the *600 claim and here the duty is statutory, not contractual. As to any implied in law contract, we note this concept is an equitable one, not contractual, and is based on a legally imposed obligation to avoid unjust enrichment. (See Bradkin v Leverton, 26 NY2d 192; Miller v Schloss, 218 NY 400.) Such enrichment is wholly absent here.
The pith of the subject claim is liability for violation of a statute. It has characteristics analogous to libel, but its genesis is purely statutory. The duty imposed (not to disclose) would not exist but for the statute (see Shepard Co. v Taylor Pub. Co., 234 NY 465). It is not a mere statutory codification of a pre-existing common-law cause of action (see Lorberblatt v Gerst, 10 NY2d 244), but rather " 'a governmental statutory denouncement of a human action heretofore undenounced’ (Fratt v. Robinson, 203 F. 2d 627, 635).” (Bevelander v Town of Islip, 10 AD2d 170, 172.) A similar action grounded in statutory liability for unauthorized release of confidential information has been deemed governed by the 90-day filing requirement of subdivision 3 of section 10, of the Court of Claims Act (see Munzer v State of New York, 41 NYS2d 98, 104). We so find here.
The second and principal argument of claimant is that even if governed by the 90-day filing requirement, the instant claim should not be deemed to accrue until claimant discovered it— i.e., until he discovered the State released the confidential information (Jan. 22, 1975). This argument has logic, equity and justice on its side, but unfortunately it does not appear to be the law of New York. A cause of action is deemed to accrue generally when the wrongful act occurs, or, at the latest, when damages accrue. (See Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212.) Under the Court of Claims Act, a "claim accrues” generally when "damages accrue” or when they can be reasonably ascertained. (See Waterman v State of New York, 19 AD2d 264; Bronxville Palmer, Ltd. v State of New York, 36 AD2d 647; Terry Contr. v State of New York, 27 AD2d 499.) Accrual on discovery is not the general rule and is applicable only in certain limited circumstances. (See Schmidt v Merchants Desp. Transp. Co., 270 NY 287.) Those are generally provided for by statute (see, e.g., fraud, CPLR 213, subd 9; 203, subd [f]), although the Court of Appeals has recently introduced a discovery rule in foreign object medical malpractice cases. (See Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427.) Flanagan, however, was decided only on the *601 "narrow question” of foreign object medical malpractice (ibid., at p 429) and specifically distinguished the case therein from general negligent medical treatment and medication cases (ibid., at pp 430, 431). The Flanagan court cited with approval Schwartz v Heyden Newport Chem. Corp. (supra) (which specifically eschewed any extension of accrual on discovery), and based their holding on a distinction which was "consistent with the rationale of Schwartz.” (Flanagan v Mount Eden Gen. Hosp., supra, at p 430.) In Schwartz and, more particularly in Schmidt v Merchants Desp. Transp. Co., supra (on which the Schwartz court specifically relied), the Court of Appeals considered the inequities which can arise from the application of the accrual on commission rule. In both cases, this State’s highest court determined the societal policy judgments embodied in Statutes of Limitation should not be disregarded because of occasional hardship. We are bound by such determination.
It should be noted that some lower court cases subsequent to Flanagan have attempted to effect a limited expansion of the discovery rule promulgated therein (see Dobbins v Clifford, 39 AD2d 1; Murphy v St. Charles Hosp., 35 AD2d 64; Slagen v Marwill, 78 Misc 2d 275; Le Vine v Isoserve, Inc., 70 Misc 2d 747), but other cases have determined the discovery rule should not be extended beyond the circumscribed holding in Flanagan (see Sosnow v Paul, 43 AD2d 978; Schiffman v Hospital for Joint Diseases, 36 AD2d 31; McQueen v County of Nassau, 83 Misc 2d 865; Fonda v Paulsen, 79 Misc 2d 936, revd other grounds 46 AD2d 540; see, also, Gerber v Manufacturers Hanover Trust Co., 64 Misc 2d 687). While we are inclined to agree with this latter view, it is of little moment since the facts herein do not come within the above-cited discovery cases or the determinative distinctions set down in Flanagan.
The court therefore finds the instant claim accrued when the Department of State released the information on or about October 18, 1974. (Munzer v Blaisdell, 183 Misc 773, 776, affd 269 App Div 970.)[1] As noted above, the action here is bottomed on statutory liability and the breach of the statute occurred when the confidential information was released. At that time *602 claimant’s damages for loss of reputation and deprivation of rights guaranteed by law, as well as his punitive damages, accrued. It is true damages for loss of salary did not accrue until claimant was fired (Oct. 23, 1974), but these are consequential damages flowing from the original injury and could be reasonably anticipated and ascertained at the time of said injury.[2] No new cause of action arises when such consequential damages arise. (See Schmidt v Merchant Desp. Transp. Co., 270 NY 287, 300, 301, supra.) The same is true with respect to claimant’s damages for personal suffering, which would apparently accrue on discovery. As to his loss of unemployment benefits, this is really an item in mitigation of damages and not true damages. Such benefits would have been an offset to be applied against the loss of salary. Under all the circumstances, especially the fact the loss of salary and personal suffering damages were reasonably foreseeable and ascertainable at the time the State released the information, we find the claim herein accrued on or about October 18, 1974. It was filed more than 90 days after said date and thus was not timely within the provisions of subdivision 3 of section 10 of the Court of Claims Act.
Our inquiry does not end here, however, since claimant’s attorney requests that his answering affidavit be treated alternatively as an application pursuant to subdivision 5 of section 10 of the Court of Claims Act. This subdivision allows the court, in its discretion, to permit a claim to be filed late provided it is shown: (a) a reasonable excuse exists for failure to timely file; (b) the State had actual knowledge of the essential facts of the claim prior to the expiration of the filing period; and (c) there is no substantial prejudice to the State due to the failure to timely file. Based on the attendant facts, we find these requirements to have been met.
The malfeasance for which claimant is suing is the release of the confidential information and he did not learn of that release until after the expiration of the 90-day period. Such lack of knowledge constitutes a reasonable excuse. (See Callanan v State of New York, 42 Misc 2d 740, affd 23 AD2d 937; 47-Albany Troy Road Corp. v State of New York, 17 AD2d 892; Gielski v State of New York, 3 Misc 2d 578.)
Since the release of the information was the wrongful act *603 (and almost all of claimant’s damages accrued on such release) and since the State itself committed that act, the State had notice of the essential facts constituting the claim. The fact defendant may have been unaware it was violating the Criminal Procedure Law is irrelevant. Just as claimants are presumed to know the technical and sometimes unfair filing requirements designed to protect the State, so must the State be presumed to know the laws protecting claimants.
The State has made no claim of prejudice and in view of the minimal delay in filing (one month) and the fact the act complained of was committed by the State itself, we discern no apparent prejudice. Also, the essential elements of the claim would seem to be in records and correspondence in the defendant’s possession. Thus the three above-noted requirements of subdivision 5 have been satisfactorily shown.
We also reject defendant’s contention that claimant has failed to show a meritorious cause of action (see Munzer v Blaisdell, 183 Misc 773, affd 269 App Div 970 supra; Munzer v State of New York, 41 NYS2d 98, supra). The clear intent of CPL 720.35 is to give a youthful offender a chance to pursue a productive life without the stigma of a criminal conviction (see People v "Y. O. 2404”, 57 Misc 2d 30). It has been held that the submission of a police applicant’s youthful offender record to the Civil Service Commission defeated "the very purpose of the [youthful offender] act” and was "in direct violence to the spirit and letter of the act.” (Matter of Cuccio v Department of Personnel-Civ. Serv. Comm. of City of N. Y., 40 Misc 2d 345, 348.) The same section which authorized the Department of State to check claimant’s fingerprints specified that only conviction for a felony or other enumerated offense would bar employment of a person by a private detective or investigator (General Business Law, § 81, subd l).[3] CPL 720.35 specifically states that a youthful offender adjudication is not a conviction and does not disqualify such offender for public office or employment or a public license. In the face of such clearly *604 expressed intent and in view of the fact section 81 of the General Business Law did not specifically require or permit the release of official records and papers relating to youthful offender cases (see CPL 720.35, subd 2), we believe the motion papers disclose a sufficiently meritorious claim.
The other points raised by defendant are not substantial. The release of information here was not a quasi-judicial act as to which the State is immune from liability. The State’s checking of claimant’s record and notifying his employer was done pursuant to a mandatory statutory duty. (See Foley v State of New York, 294 NY 275.) No discretion was involved. It was a purely ministerial act "arising out of the day-by-day operations of government” (Weiss v Fote, 7 NY2d 579, 585). For such acts it is "proper and necessary to hold * * * the State liable” (ibid., at p 585; Crisafulli v State of New York, 37 AD2d 688). The characterization of a State act as "governmental” does not by itself make such act immune (see Jones v State of New York, 33 NY2d 275, 280), although here we see no reason why the acts complained of (checking fingerprints with the division of criminal identification and notifying employers) could not have been done by a private person (see Granger v State of New York, 14 AD2d 645, 646). If the court were to adopt the position argued for by defendant, we would in effect be restoring to the State a large portion of the sovereign immunity which was supposedly eliminated by the mandate of the Legislature in section 8 of the Court of Claims Act. (See McCrink v City of New York, 296 NY 99, 106.)
Further, the Court of Appeals has recently indicated the quasi-judicial exception to the State’s waiver of immunity will not be extended to intentional torts. (See Jones v State of New York, supra, at p 279.) Obviously, this court can make no determination relative to the instant claim (such is properly left for trial), but it would seem an analogy could be drawn between intentional torts and intentional violations of an individual’s statutory rights. We fail to see how it can be legitimately argued that the State has the "discretion” to violate the law. Such a position simply cannot be countenanced.
As to defendant’s contention that claimant should have instituted an article 78 proceeding to quash his criminal record, we fail to see its relevance. The subject records were confidential (prior to the State’s action) and thus there should be no need to also have them expunged. Moreover, it would *605 appear the damage has already been done by the State’s release of the records and it would be a futile gesture to have them expunged now.
Finally, defendant’s position that claimant’s proper remedy with respect to the loss of unemployment benefits is an administrative appeal is weakened by the above-noted fact such loss is not a proper element of damage, but really an item in mitigation of damages (see p 602, supra). Apparently, it is claimant’s position that the loss of benefits was a consequence flowing from the original wrongful act of releasing the confidential information. He is thus not suing for the denial of benefits per se, but rather as an occurrence proximately related to and caused by the said wrongful act. On the record before us we fail to see the validity of such relationship and causality, but again this is a matter better determined by the trier of the facts after a full exposition of the evidence.
Accordingly, the only ground for dismissal we find valid is untimely filing. However, we also find claimant has satisfied the requirements of subdivision 5 of section 10 of the Court of Claims Act and, under the discretion granted us therein, we direct the subject claim be deemed timely filed as of February 26, 1975. The State’s cross motion is therefore denied.
As to claimant’s motion for discovery and inspection, the State has failed to indicate any objection thereto and claimant’s moving papers reveal sufficient facts to satisfy the requirements of CPLR 3120. Also, the items requested are generally proper ones for discovery, although certain aspects of claimant’s application are overly broad. Discovery should be limited only to items deemed relevant to the subject claim. We therefore grant claimant’s motion but limit it to the extent set forth in the order accompanying this opinion.

. We are aware the analogous case of Munzer v State of New York (supra) found accrual to be on discovery (ibid., at pp 103, 104), but in view of our discussion above and the Appellate Division affirmance of Munzer v Blaisdell (supra) we deem ourselves bound by the rule set down in the latter case.

. Also, claimant’s filing of his claim was more than 90 days after his firing so, even if accrual were deemed to occur on such later date, it would not aid claimant.

. The clear intent of this section, and of the entire statutory regulation of private detectives and investigators, is to protect the public by excluding convicted felons (and persons convicted of analogous offenses) from the above occupations. Thus we must construe the phrase "any record” in subdivision 6 of section 81 of the General Business Law to mean any record of a criminal conviction. In any event, following the general rule of statutory construction that the more recent and more specific statute takes precedence over an older and more general statute-, any inconsistency between section 81 of the General Business Law and CPL 720.35 must be resolved in favor of the latter.