Albert A. Blinder, J.
Claimant moves by Motion No. M-18603 for an order pursuant to section 17 of the Court of Claims Act for an examination before trial and for the production of certain records for discovery and inspection. Defendant cross-moves by Motion No. M-18739 for an order pursuant to *1091 CPLR 3211 (subd [a], pars 2, 7), and section 17 of the Public Officers Law dismissing the claim, and further declaring the "Supplemental Notice of Claim” attached to claimant’s notice of motion a nullity, pursuant to section 11 of the Court of Claims Act and section 1200.17 of the Rules of the Court of Claims (22 NYCRR 1200.17). The motions are consolidated for purposes of decision.
FACTS
The claim asserts that it is a claim "for breach of contract of employment, express and/or implied, and for indemnity as provided by the Public Officers Law.” It alleges that claimant is a physician and was, on May 12, 1972, a paid employee of the State University at its Downstate Medical Center where he was a professor of medicine and head of the division of otolaryngology. On that date claimant performed an operation. Thereafter an action sounding in malpractice arising out of that operation was commenced against claimant in the Supreme Court, Kings County. Claimant states that "[wjhen [he] was served with the summons, [he] immediately turned it over to the Vice President for Business Affairs at Downstate Medical Center.” On September 7, 1972, within a few days thereafter, the summons and complaint were forwarded to the Downstate Medical Center’s insurance carrier.
It appears that the insurance carrier retained a law firm to interpose a defense to the action; that the litigation progressed for a number of years and was finally placed on the trial calendar.
No copy of the summons and complaint was delivered or sent to the Attorney-General’s office.
On January 15, 1975 the insurance carrier wrote to the Attorney-General informing him of the action and of the fact that the policy had a $100,000 deductible provision.
The letter stated "[w]e are putting you on notice of this pending litigation in view of the fact that the first $100,000 of any settlement or judgment will be borne by the State of New York under the terms and conditions of the aforementioned policy”.
On January 28, 1975 the Attorney-General’s office advised ‘ Downstate Medical Center by mail of the letter dated January 15, 1975, noting that the action was commenced solely against claimant and further that "[i]t is incumbent that you notify *1092 [claimant] immediately that his private insurance carrier * * * is to defend his interest in this action.”
On February 5, 1975 the Downstate Medical Center by memorandum transmitted a copy of the Attorney-General’s letter to claimant. (This is the first time following the commencement of the Supreme Court action that claimant was notified of the deductible provision in the policy and his concomitant personal liability in the suit.) On the same date, Downstate Medical Center informed the Attorney-General by letter that claimant had been so advised and that claimant would be in communication with the Assistant Attorney-General for clarification.[1]
Claimant then consulted with counsel who replied by letter dated March 5, 1975, that the claimant’s policy had an indorsement providing coverage only for professional services rendered outside the scope of claimant’s employment. On March 17, 1975 the university counsel responded to claimant’s counsel’s letter and, voiced an opinion contrary to an April 24, 1975 letter opinion of the Special Deputy Superintendent of Insurance, who, as liquidator, stated "there is a policy indorsement for which the Doctor paid a reduced premium, whereby coverage was restricted by excluding coverage for the doctor’s activities at Downstate.”[2]
The malpractice action in the Supreme Court was, during this period, adjourned from time to time. It appears that the Attorney-General was advised of the trial dates and refused to defend or appear.
Claimant states that the malpractice action was finally settled in the amount of $65,000. The damages asserted in the *1093 moving papers are $75,000, representing the settlement plus $10,000 as counsel fees. The claim and the moving papers do not state to whom the counsel fees were paid or to be paid; whether they were reasonable and necessary; the date, reasonableness and propriety of the settlement or the fact of payment. These determinations must await an amended pleading and a plenary action.
THE state’s MOTION TO DISMISS
The State’s motion to dismiss is predicated upon the claimant’s failure to comply with section 17 of the Public Officers Law (Indemnification of officers and employees of the state.) Under subdivision 1 thereof, the State is required to "save harmless and indemnify all officers and employees of the state from financial loss arising out of any * * * suit or judgment by reason of [any] alleged negligence * * * provided that such officer or employee at the time damages were sustained was acting in the discharge of his duties and within the scope of his employment and that such damages did not result from the willful and wrongful act or gross negligence”. The statute further provides that the employee is to deliver the summons and/or complaint or a copy thereof to the Attorney-General within five days of the time he is served. Subdivision 2 of section 17 of the Public Officers Law provides that upon delivery of the legal pleadings, "the attorney general may assume control of the representation of such officer or employee.” (Emphasis supplied.)
The papers submitted by claimant permit no conclusion but that the subject operation was performed as part of a teaching function and was within the scope of claimant’s employment.[3]
The facts would indicate that the summons and complaint were delivered immediately to the business affairs office at Downstate Medical Center. Claimant states that he never was instructed to give summonses and complaints to the Attorney-General; that it was always considered sufficient compliance to deliver process to the business affairs office which would then arrange for the malpractice carrier to defend; and that these were the instructions given to all of the members of the faculty.
*1094 In the papers submitted in opposition to the defendant’s motion, excerpts of the handbook for faculty are quoted wherein it is stated inter alia that. employees are protected from financial loss arising out of lawsuits resulting from discharge of their professional duties. It is also stated that employees having responsibilities related to patient care are covered without charge under blanket insurance policies against malpractice suits.[4]
In her reply affidavit, defendant’s counsel argues that, (1) the existing practice as outlined above could not be an effective argument against noncompliance with subdivision 1 of section 17 of the Public Officers Law, stating "[tjhere could not be a practice contrary to the law.”, and (2) section 17 specifically provides that the employee shall deliver the summons within five days to the Attorney-General. The law, it is argued, does not empower an employee to deliver process to anyone other than the Attorney-General nor does it authorize another employee or agency to accept it for delivery to the Attorney-General. It is submitted that timely notice to the Attorney-General is essential so that the State may determine whether the employee was acting within the scope of employment, whether the alleged damages resulted from a willful and wrongful act or gross negligence of such employee and whether the Attorney-General would assume control of the representation of such employee pursuant to subdivision 2 of section 17 of the Public Officers Law.
The defendant further argues that the handbook for faculty states, in its preface, that it is not an official publication and is not intended to supersede but rather to supplement and interpret other official publications. We, however, note that pursuant to 8 NYCRR 333.4, the chief administrative officer of the State University Downstate Medical Center was required to prepare and publish such a handbook.
As previously mentioned above, there is no question on this motion but that claimant would be covered by the language of section 17 of the Public Officers Law. Indeed, the university counsel in his letter of February 28, 1975 stated "[ajccordingly, I’d conclude that section 17 applies, though we agree that the doctor’s own carrier would be responsible for any judgment within the Downstate deductible.”[5]
*1095 THE ISSUE
The issue is: Does a failure to deliver the summons and complaint to the Attorney-General within five days preclude the operation of section 17 of the Public Officers Law in this case?
THE LAW
Subdivision 3 of section 17 of the Public Officers Law provides that section 17 shall not in any way impair, limit or modify the rights and obligations of any insurer under any policy of insurance.[6]
Insurance coverage did exist in the instant case and as we previously mentioned, claimant was led to believe that he was protected from financial loss by it.
We think that, in the light of these representations, when claimant delivered process to the business affairs office, he complied with section 17 of the Public Officers Law. The court cannot help but comment that the defendant’s position at bar appears to be in derogation of the purpose and intent of the Public Officers Law. The purpose of the five-day delivery (of the summons and complaint) requirement is to afford to the State an opportunity to determine whether the employee was acting within the scope of his employment and whether the alleged damages resulted from a willful and wrongful act or gross negligence. This is not in issue for the purposes of this motion. Another reason for it might be to prevent a default. There was none in the Supreme Court action.
As to whether the Attorney-General would "assume control” of the defense, he had more than sufficient notice to intervene but opted to take no action. Under the statute that is his prerogative. He should not now make complaint.
Claimant alleges that he relied on the instructions found in *1096 the faculty handbook and the assurances therein by immediately delivering process to the business affairs office. We deem this to be true. (See Hart v City of Glens Falls, 8 AD2d 654, 655 supra; Hawley v State of New York, 28 Misc 2d 150; Gielski v State of New York, 3 Misc 2d 578.) The business affairs officers were his superiors and therefore, presumably, well versed in appropriate procedures. It likewise appears that the business affairs office delivered the summons and complaint to the carrier, who in turn retained counsel. When the summons and complaint were delivered to the insurance company and when they engaged counsel, they in effect appeared for the defendant. This was not an appearance that was unauthorized. It was an appearance which was agreed to by the terms of the insurance policy under which Downstate Medical, an agency of the State, was covered. It was therefore an appearance of which the defendant had knowledge.
It is the opinion of the court that the facts related above constituted constructive delivery of the summons and complaint under the statute. When counsel appeared for claimant that appearance constituted a constructive appearance in behalf of the State of New York. We conclude on the papers in the instant motion that the State of New York, had adequate statutory notice.
Even if there were no constructive delivery nor a constructive appearance by the State, the result would, nevertheless, be the same. The Court of Appeals recently applied the doctrine of estoppel in apposite situations to governmental agencies and subdivisions. (Bender v New York City Health & Hosps. Corp., 38 NY2d 662.) Judge Wachtler speaking for the Court in Bender stated (p 668): "[w]e believe that where a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice, that subdivision should be estopped from asserting a right or defense which it otherwise could have raised.”
We hold that the actions of the defendant, by its officers, officials or agents, estop it from disclaiming liability, responsibility and the obligation to save the claimant harmless and indemnify him under section 17 of the Public Officers Law.[7] The defendant’s motion to dismiss the claim is denied.[8]
*1097 The claimant moved by Motion No. M-18603 for an order directing an examination before trial and the production of certain records for inspection and discovery.
Attached to claimant’s motion papers was a document entitled "Supplemental Notice of Claim.” This document is not properly before the court as a pleading. If claimant desires the court to consider it as such, he must move under the appropriate sections of the Court of Claims Act and court rules for permission to amend the claim heretofore filed.
Claimant’s discovery motion is granted. As this is the first application for discovery, claimant may not designate specific witnesses to be examined. A short-form order will be signed directing the appearance of an appropriate witness and the production of certain books and records.

. On February 14, 1975 claimant replied to the Assistant Attorney-General furnishing additional information with respect to the action’s progress and advising that plaintiff, in the Supreme Court action, as a patient, had also been the subject of pedagogical treatment by residents and students. On February 20, 1975 the Assistant Attorney-General responded that "[t]he proper party to defend you in this action is your own malpractice insurance carrier”. To further complicate the matter, claimant’s private carrier was in liquidation (having been adjudged insolvent by an order of the Supreme Court, New York County filed on April 12, 1974) with the Superintendent of Insurance as liquidator.

. On March 23, 1976 the Special Deputy Superintendent of Insurance wrote again to claimant’s counsel reiterating that there is no coverage under claimant’s policy for the Supreme Court action. The liquidator stated that he had no standing in the pending litigation and consequently had no objection to defendant’s settling the case, without representing that any coverage existed under claimant’s policy. The claimant had previously filed a proof of claim dated May 8, 1975 with the office of the Special Deputy Superintendent of Insurance for the malpractice action.

. The complaint in the Supreme Court action, handed up as a defendant’s exhibit, indicates that this may be a factual question at trial. Upon this motion the allegations must be deemed true. (Hart v City of Glens Falls, 8 AD2d 654, 655.)

. No reference is made to delivery of process to the Attorney-General or of deductible policy provisions.

. The protection so provided by section 17 of the Public Officers Law applies to *1095 staff physicians who are full-time State employees working on the premises of either the Downstate or Upstate Medical Center Hospitals where fees for their services are paid to the State. (1975 Opns Atty Gen 78.) It has also been held that claims for negligence against State employees do not have to be brought exclusively in the Court of Claims and may be brought against the employee in Supreme Court irrespective of section 17 of the Public Officers Law. (Sutton v Coulter, 78 Misc 2d 730, 731.)

. In recommending approval of section 17, the Attorney-General in his memorandum to the Governor dated June 22, 1971 stated ''[t]his bill will not increase the workload of my office since the Attorney General’s office has defended State officers and employees sued under the circumstances described in the bill except when the liability involved is covered by insurance.”

. We do not believe that the notice provisions of the Public Officers Law are jurisdictional as are those in the Court of Claims Act. Hence, this application of Bender is not necessarily meant to be applicable to the State on all notice provisions.

. Claimant also argues breach of an employment contract. We feel it not necessary to discuss that issue in this opinion.