| **Anagnostakis v Bonelli** |
| 2024 NY Slip Op 33267(U) |
| September 17, 2024 |
| Supreme Court, Orange County |
| Docket Number: Index No. EF001565-2024 |
| Judge: Timothy P. McElduff, Jr. |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ORANGE

---

MICHAEL ANAGNOSTAKIS, MICHAEL PADUCH,
GENESIS RAMOS & LAURIE TAUTEL, AS
MEMBERS OF THE ORANGE COUNTY
LEGISLATURE,

                              Petitioners,

-against-

KATHERINE E. BONELLI, CHAIR, ORANGE
COUNTY LEGISLATURE, AND COUNTY OF
ORANGE,

                              Respondents.

**DECISION AND ORDER**
Index No. EF001565-2024

---

**McElduff, A.J.S.C.**

By verified petition filed on February 26, 2024, Petitioners commenced the instant proceeding seeking an order: (a) vacating and annulling the determination of the Chair of the Orange County Legislature dated February 8, 2024, (b) directing the County of Orange to defend and indemnify Petitioners from certain claims raised in a Notice of Claim served on the County by StarCIO LLC and Isaac Sacolick, and (c) directing the County to pay the costs and disbursements of this proceeding as provided by law. The Respondents appeared in opposition to the petition and have now moved to dismiss same in its entirety.

The Court has considered the following submissions on Respondent Orange County's motion to dismiss the petition (Motion Sequence No. 2) and Respondents Katherine E. Bonelli and Orange County Legislature's motion to dismiss the petition (Motion Sequence No. 3) pursuant to CPLR §§ 7804(f), 3211(a)(5) and 3211(a)(7):

> 1. Petitioners' Notice of Petition and Verified Petition together with Exhibits 1-8, filed on February 26, 2024 (Doc. Nos. 1-10);

1

2. Respondent Orange County's Notice of Motion, Badura Affirmation in Support together with Exhibits A-C, Memorandum of Law in Support of Motion filed on April 15, 2024 (Doc. Nos. 15-20);

3. Respondent Bonelli/Orange County Legislature's Notice of Motion, Sokoloff Affirmation in Support together with Exhibits A-C, Memorandum of Law in Support of Motion, filed on April 15, 2024 (Doc. Nos. 22-27);

4. Petitioners' Memorandum of Law in Opposition (to both motions to dismiss); Sussman Affirmation in Opposition (to Respondent Bonelli/Orange County Legislature's motion to dismiss) together with Exhibits 1-2, Sussman Affirmation in Opposition (to Respondent Orange County's motion to dismiss), filed on April 26 and 29, 2024 (Doc. Nos. 29-33); and

5. Sokoloff Affirmation in Reply together with Exhibits A-B, Memorandum of Law in Reply, filed on May 3, 2024 (Doc. Nos. 34-37).

### Background

The Petitioners are four individual members of the Orange County Legislature. In the Fall of 2023, the Petitioners raised concerns that Orange County had awarded a substantial contract for information services to a company, StarCIO, solely owned by the brother-in-law of the Orange County Commissioner of Human Resources, allegedly without being subject to competitive bidding or customary legislative oversight. (*See* Petition ¶¶16-18). Petitioners presented these concerns, in writing, to the Orange County Executive. (*See* Petition ¶19). Petitioners additionally issued a press release regarding the lack of response from the County Executive. (*See* Petition ¶20). Subsequently, on October 25, 2023, the Petitioners participated in a press conference at the Orange County Legislative Building concerning the StarCIO contract, which was organized by New York State Senator James Skoufis, who is Chair of the State Senate Investigations Committee. (*See* Petition ¶¶20-24).

By Notice of Claim dated January 17, 2024, StarCIO, LLC, and Isaac Sacolick (collectively, the "Claimants") stated their intent to commence an action against the four

2

[* 2]

Petitioners, in their individual capacities, as a result of the following alleged defamatory statements made by the Petitioners and Senator Skoufis at the press conference: " . . . that Mr. Sacolick broke the law, that he did so because he was in dire financial straits with a home in foreclosure, that StarCIO is a shady business with lapsed insurance, and that Mr. Sacolick's brother-in-law awarded StarCIO the contract." (*See* Notice of Claim, Sussman Affm. Ex. 1).

On January 19, 2024, Claimants served the Notice of Claim on the Orange County Attorney's Office. Claimants never served the Notice of Claim upon the four individual Petitioners, who were the only parties named the caption of the Notice of Claim. (*See* Petition ¶¶36, 37).[1]

That same day, on January 19, 2024, the County Attorney e-mailed the Notice of Claim to the Orange County Legislative Counsel who, in turn, e-mailed the Notice of Claim to each of the Petitioners. (*See* Petition ¶39).

On January 22, 2024, the Legislative Counsel e-mailed each of the Petitioners to advise them that she would not be representing them as individuals or individual legislators in connection with the Notice of Claim. (*See* Petition ¶40).

By letter dated February 1, 2024, Michael Sussman, Esq., attorney for the Petitioners, wrote to the County Attorney and Chairwoman of the Legislature, Katherine Bonelli (hereinafter, the "Chair"), and requested that Orange County provide a defense and indemnification to the Petitioners. (*See* Petition ¶41).

By letter dated February 8, 2024, the County Attorney notified Mr. Sussman that the Chair had made a determination (also dated February 8, 2024), pursuant to Local Law No. 3, that the Petitioners' request for defense and indemnification from the County was denied as untimely and,

[* 3]

further, denied since the Petitioners were not acting within the scope of their employment duties when they engaged in the tortious acts alleged in the Notice of Claim. (*See* Petition ¶¶42, 44).

In response thereto, Petitioners commenced the instant proceeding to challenge and vacate the Chair's determination dated February 8, 2024, and compel the County to provide a defense and indemnification to the Petitioners, together with an order directing the County to pay the costs of the proceeding. (*See* Petition *ad damnum* clause, p.10).

Respondents have moved to dismiss the petition herein due to (1) the untimeliness of Petitioner's request for defense and indemnification and (2) the rational basis for Chair's determination that the Petitioners were not acting within their scope of employment at the time of their alleged defamatory statements.

**Timeliness of the Request for Defense and Indemnification**

In relevant part, Local Law No. 3 conditions a defense and indemnification upon the county employee's delivery of the Notice of Claim to the County Attorney no later than 10 days after the employee is served with it. (*See* Local Law No. 3, Section 6[1]).

Here, the County Attorney received service of the Notice of Claim from the Claimants on January 19, 2024. In turn, the County Attorney e-mailed a copy to the Legislative Counsel on January 19. In turn, the Legislative Counsel e-mailed a copy to the Petitioners on January 19. (*See* Petition, Ex. 5). On January 22, 2024, Legislative Counsel, again, e-mailed the Petitioners to provide "clarification" that she would not be representing them in connection with the Notice of Claim.

The Respondents argue that the Petitioners' tender of their request for a defense and indemnification on February 1, 2024, which was 13 days after the Petitioners first received a copy

[* 4]

of the Notice of Claim from Legislative Counsel by e-mail and 10 days after Legislative Counsel clarified that she would not be representing them, is untimely.

Critical to the analysis, here, is the fact that *the Claimants* never served the Notice of Claim upon *the Petitioners*, thus, never commencing the statute of limitations against the Petitioners pursuant to Local Law No. 3, Section 6(1). The Respondents have failed to offer any legal authority to support their premise that e-mails from the County Attorney and/or Legislative Counsel somehow constitute service of a legal document upon the Petitioners that requires the Petitioners to respond or to act pursuant to Local Law No. 3 or otherwise.

In any event, the purpose of the 10–day delivery requirement is (1) to prevent default and (2) to afford the municipality an opportunity to promptly investigate the incident to determine, among other things, whether the employee was acting within the scope of his or her employment. *Polak v. City of Schenectady*, 181 A.D.2d 233, 235 (3d Dept. 1992). Since the Notice of Claim was in the possession of the County Attorney in the first instance, the County Respondents cannot claim (and do not claim) any prejudice from Petitioners' request for defense/indemnification on February 1, 2024, and, thus, the County Respondents are equitably estopped from asserting Local Law No. 3's limitations defense against the Petitioners under the circumstances of this case. *See Polak v. City of Schenectady*, 181 A.D.2d 233, 235 (3d Dept. 1992); *Lapidot v. State*, 88 Misc. 2d 1090 (Ct. Cl. 1976); *see, e.g., Sharpe v. Sturm*, 28 A.D.3d 777, 778, (2d Dept. 2006) (dismissal for untimeliness of notice under Public Officers Law § 18 was reversed where the School District defendant, although not having been timely served with a notice for defense and indemnification, was a co-defendant in a civil rights lawsuit and was thus aware that the School District employee co-defendant was seeking representation for the alleged claims).

5

[* 5]

## Scope of Public Employment or Duties

Local Law No. 3 provides that the County shall provide for the defense of the employee in an action or proceeding arising out of any alleged act or omission which occurred or is alleged to have occurred while the employee was acting within the scope of his or her public employment or duties. (*See* Local Law No. 3, Section 4). For Legislative Branch employees, the Chair of the Legislature makes the determination whether the employee was acting within the scope of public employment or duties. (*See* Local Law No. 3, Section 4). Irrespective of the allegations made against the employee, if the municipality's investigation demonstrates that the wrongful act or omission actually occurred within the scope of the public employee's duties, the municipality must provide a defense.[2] *Polak v. City of Schenectady*, 181 A.D.2d 233, 236 (3d Dept. 1992). The municipality's determination may be set aside only if it lacks a factual basis, and in that sense, is arbitrary and capricious. *Polak,* 181 A.D.2d at 236.

While torts committed by an employee who inartfully or irregularly tries to carry out his or her employer's assignment may be found to be within the scope of employment, torts committed for personal motives unrelated to the furtherance of the employer's business cannot. *Island Associated Coop., Inc. v. Hartmann*, 118 A.D.2d 830, 830–31 (2d Dept. 1986). Thus, an employee may exceed his or her authority or act contrary to instructions or protocol when committing the tort but may yet be acting, nonetheless, within the scope of his or her duties/employment. *See Riviello v. Waldron*, 47 N.Y.2d 297 (1979) (employee who injured a patron in self-defense was still acting within the scope of his employment as sandwich maker instructed to socialize with the patrons); *Sims v. Bergamo*, 3 N.Y.2d 531, 535 (1957) (tavern employee who committed an assault in the course of attempting to protect property and maintain order was still acting within the duties/interests of his employment). In comparison, however, if the employee was acting out of

6

wholly or purely personal purposes, then the employee is not acting with the scope of the employee's duties/employment. *Compare, Stavitz v. City of New York*, 98 A.D.2d 529 (1st Dept. 1984).

A county shall defend its employees against liability resulting from misconduct in the scope of their employment. *See Hennessy v. Robinson*, 985 F. Supp. 283, 286 (N.D.N.Y. 1997) (discussing County Law § 501[1]). Additionally, the New York State Legislature enacted Public Officers Law §18, which sets forth a comprehensive and uniform approach to enacting both defense and indemnification protection for municipal employees acting within the scope of their employment; however, for a municipality to adopt Public Officers Law § 18, the local enactment/local law must make specific and formal reference to Public Officers Law § 18. *See Hennessy v. Robinson*, 985 F. Supp. 283, 287 (N.D.N.Y. 1997); *see also* Public Officers Law § 18(2). Thus, with respect providing defense and indemnification, a County may either (1) pass no local legislation and defend pursuant to County Law § 501, (2) adopt Public Officers Law § 18 either solely or as a supplement to local law or (3) agree to defend and indemnify pursuant to its own local law or resolution. *Hennessy v. Robinson*, 985 F. Supp. 283, 286–87 (N.D.N.Y. 1997). Whatever the County enacts regarding defense and indemnification is considered a term and condition of employment. *See* 1998 N.Y. Op. Att'y Gen. (Inf.) 1014 (1998).

In this instance, Orange County has enacted Local Law No. 3, which does not specifically or formally adopt Public Officers Law §18 but, instead, provides for both the defense and indemnification of County employees acting within the scope of their employment on its own terms. *See generally*, Local Law No. 3 annexed to the Sokoloff Affm. In Support at Exhibit A; *compare, e.g., Nichols v. Rensselaer Cnty.*, 132 Misc. 2d 489 (Sup. Ct. 1986), *aff'd*, 129 A.D.2d 167 (3d Dept. 1987) (local law specifically and expressly adopted Public Officers Law § 18).

7

[* 7]

Here, the Petitioners spoke at a press conference concerning governmental transparency and allegations surrounding the procurement of the StarCIO contract, during which they allegedly defamed a private individual and his company. Local Law No. 3 provides that County employees shall be provided defense for any act or omission that occurred (whether or not alleged in the complaint) while the employee was acting within the scope of his or her public employment or duties and indemnification for any final judgment, order or decision resulting therefrom. (*See* Local Law No. 3, Section 4[1] and Section 5[1]).

The Chair determined that the Petitioners' alleged defamatory statements did not occur while the Petitioners were acting within the scope of their public employment or duties for three main reasons.

First, it was determined that the Petitioners' alleged defamatory statements were made during a "political press conference," and, thus, had nothing to do with the scope of their public employment as Legislators. That determination was conclusory, in that it does not cite to any particular case authority or statutory authority to support it, nor any factual support from the County Charter or Legislative Manual. While there may or may not have been a political benefit accruing to the Petitioners for making public statements at the press conference, the statements were made in connection with the Petitioners' investigative efforts at the County level and their findings in connection to the same. (*See* Verified Petition and Exhibits, generally). To be distinguished, this case is not akin to *Glacken v. Inc. Vill. of Freeport*, in which a mayor was not entitled to defense and indemnification where he allegedly made defamatory statements at a candidates forum during an election campaign. *See Glacken v. Inc. Vill. of Freeport*, No. 09 CV 4832 DRH AKT, 2014 WL 1836143, at *6 (E.D.N.Y. May 8, 2014). Therefore, it cannot reasonably be argued that Petitioners' statements at the press conference were for purely personal

8

[* 8]

purposes. Accordingly, the conclusion that Petitioners' statements had nothing to do with the scope of their public employment lacked a factual basis.

Next, the Chair determined that Petitioners' statements were *ultra vires* because the Petitioners' statements (related to their own investigative efforts) were made *prior* to the Legislature authorizing and undertaking an investigation as a whole. Section 2.02(q) of the Orange County Charter provides that investigations are expressly part of the County Legislature's duties; however, Section III(i) of the Legislative Manual requires a two-thirds vote of the Legislature in order to properly authorize and conduct a Legislative investigation. Notably, however, the Legislative Manual simultaneously provides that, "Each Legislator possesses independently the same fundamental powers, duties and responsibilities which were outlined earlier for the Legislature as a whole." (*See* Sokoloff Reply Ex. B, Legislative Manual, Section II[B] and Section I[3][i]). Furthermore, the Legislative Manual additionally states that an individual Legislator has a relationship with the electorate and, thus, a duty "To present information and interpretations of action taken or proposed to be taken by the County Government to people in meetings of the public, private groups and individuals to the end that his constituency will be reliably informed." (*See* Sokoloff Reply Ex. B, Legislative Manual, Section II[B][2][a][2]). Thus, in the presence of these provisions under the Legislative Manual, it cannot rationally be said that there is no possible factual or legal basis on which the County might eventually be held to indemnify. *See Dreyer, Lancaster, Servidone, Mathis, supra.* Instead, the Petitioner legislators were acting within the scope of their employment/duties. Furthermore, even if the Petitioners "inartfully" or "irregularly" tried to carry out their legislative duties under the County Charter and Legislative Manual by means of the subject press conference, it cannot rationally be said that, in the presence of such provisions in the Legislative Manual, the Petitioners committed torts purely for personal motives

9

that were completely unrelated to the furtherance of legislative duties.[3] *See, e.g., Schulz v. Doetsch,* 217 A.D.2d 861 (3d Dept. 1995) (holding that simply because the acts in question may be characterized as intentional wrongdoing [which included several illegal acts and charges of official misconduct] a defense must be provided where the acts arose out of a public function and were not entirely unrelated to public employment). Having failed to consider or apply the aforementioned provisions of the Legislative Manual, the Chair's *ultra vires* determination was arbitrary and capricious.

Finally, the Chair determined that the Petitioners were not legally entitled to indemnification because the Petitioners were accused of an intentional tort (i.e., defamation) pursuant to Public Officers Law § 18(4)(b), which provides the following exclusionary language: "Except as otherwise provided by law, the duty to indemnify and save harmless prescribed by this subdivision shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee."[4] This determination, however, was contrary to law, specifically, Local Law No. 3.[5]

As discussed *supra,* Orange County did not adopt Public Officers Law § 18; instead, it enacted Local Law No. 3, which contains a broader duty to indemnify than Public Officers Law § 18. Unlike Public Officers Law § 18, Local Law No. 3 provides that Orange County shall indemnify and save harmless the employee in the amount of any final judgment, order or decision, or in the amount of any County-approved settlement, for any act or omission occurring while the employee was acting within the scope of his or her employment, *without any exclusion* of injury or damage related to intentional wrongdoing or recklessness. *See* Sokoloff Affm. In Support, Ex. A, Local Law No. 3, Section 5[1]; *compare* Public Officers Law § 18(4). Instead, Local Law No. 3 only excludes indemnification for acts resulting in a conviction of a Class A Misdemeanor or

10

[* 10]

higher crime under New York Penal Law or a similar federal crime under Title 18 of the United States Code. *See* Sokoloff Affm. In Support, Ex. A, Local Law No. 3, Section 5[1]; *compare* Public Officers Law § 18(4)(b). Accordingly, the Chair's determination denying indemnification to the Petitioners because they were accused of an intentional tort was contrary to Local Law No. 3 and lacked a rational basis.

### Representation by the County Attorney, counsel designated by the County Attorney or by private counsel of choice.

Section 4(2) of Local Law No. 3 provides that employees shall be entitled (subject to the qualifications discussed *supra*) to be represented by the County Attorney or counsel designated by the County Attorney at no cost. Section 4(2) further provides that if the County Attorney determines that a conflict of interest exists between the employee and the County (or if a court determines the same), then the employee is entitled to be represented by counsel of his or her choice at the expense of the County. (*See* Sokoloff Affm. In Support, Ex. A, Local Law No. 3, Section 4[2]).

In their letter to the Chair and the County Attorney dated February 1, 2024, the Petitioners, through their counsel, requested that the County grant them a defense by private counsel of their choosing "given the obvious conflicts of any representation through the County Attorney's Office" and nothing more. (*See* Petition, Ex. 6). In response, the Chair denied the Petitioners' request for private counsel, concluding that since the County was not a named party to the action, there would appear to be no legal conflict between the Petitioner and the County. (*See* Petition, Ex. 7).

Neither party has briefed the alleged conflict issue. Even assuming that the County Attorney did have an impermissible conflict of interest, the Petitioners have failed to show how or why the County Attorney could not appoint a designee in his place, at no cost, pursuant to Section 4(2) of Local Law No. 3. Additionally, should an action by the Claimants proceed and should the

11

[* 11]

County Attorney or his designee proceed to represent the Petitioners and should a conflict of interest then exist or later arise between the Petitioners and the County Attorney or his designee, then the Petitioners will still have the opportunity to request disqualification/substitution of counsel pursuant to Section 4(2) before the court/judge in which the Claimants' action is pending.

Thus, to the extent that Petitioners seek an order declaring that the Chair's denial of private counsel was arbitrary, capricious or irrational, the Petitioners' conclusory request for relief must be denied. Instead, the County Attorney shall proceed to determine whether the Petitioners' defense shall be provided by himself, his designee or by private counsel of the Petitioners' choosing, pursuant to the procedure set for the in Local Law No. 3, Section 4(2).

### Petitioners' request for attorney's fees/costs of the instant proceeding

Finally, Petitioners seek an order awarding them their costs and disbursements for bringing this proceeding.

Under the "American Rule," attorney's fees and costs are incidents of litigation, and a prevailing party may not collect them from the loser unless an award is authorized by a contract between the parties, a statute or a court rule. *See Baker v. Health Mgmt. Sys., Inc.*, 98 N.Y.2d 80, 88 (2002).

In this case, Local Law No. 3, Section 6(5), provides that the County shall reimburse the employee for the reasonable attorney's fees and costs charged to the employee in obtaining the reversal of the Legislative Chair's initial determination via an Article 78 proceeding.[6] (*See* Sokoloff Affm. In Support, Ex. A, Local Law No. 3, Section 6[5]).

As discussed herein, the Chair's determination to deny a defense and indemnification to the Petitioners has been reversed by this Court. As a result, the Petitioners are entitled to an award

12

[* 12]

of reasonable attorney's fees and costs incurred in this Article 78 proceeding under the authority of Local Law No. 3.

### Conclusion

For the reasons set forth above[7], it is hereby

ORDERED that Respondents' motions to dismiss (Motion Nos. 2 and 3) are denied; and it is further

ORDERED that the petition is granted as set forth herein and, accordingly, the determination of the Chair of the Orange County Legislature dated February 8, 2024, is reversed as set forth herein; and it is further

ORDERED that Orange County shall provide defense and indemnification to the Petitioners, pursuant to Local Law No. 3 of 1998, for any action/proceeding or resulting judgment/order/decision limited to the allegations stated in the Notice of Claim dated January 17, 2024, by Claimants StarCIO, LLC, and/or Isaac Sacolick; and it is further

ORDERED that, pursuant to Local Law No. 3 of 1998, Petitioners are awarded the reasonable attorney's fees and costs charged to them in this proceeding and that, in furtherance of the same, Petitioners' counsel shall e-file his affirmation of fees/cost and supporting invoices/proof thereof within 30 days of the date of this Decision and Order for the Court's consideration.

This constitutes the Decision and Order of the Court.

Dated: September 17, 2024
      Goshen, New York

Hon. Timothy P. McElduff, Jr., A.J.S.C.

---

[1] Specifically, and somewhat confusingly, the Notice of Claim does not name the Respondents herein and states that the Claimants intend to commence an action against the Petitioners "in their individual capacities for tortious misconduct they committed outside the scope of any official duties." Yet, "out of an abundance of caution and to preserve their rights to bring suit" the Claimants served the Notice of Claim on the Respondents.

13

[* 13]

[2] Even where a claimant fails to allege that the actions or omissions occurred within the scope of the employee's duties or employment, a municipality is under an obligation to perform an objective investigation of the facts of the claim to determine whether or not the employee was acting within the scope of the employee's duties or employment. *See Merrill v. County of Broome*, 244 A.D.2d 590 (3d Dept. 1997); *Salvatore v. Board of Education*, 2009 WL 8545576 (Sup. Ct. 2009).

[3] To conclude otherwise could have the effect of discouraging our elected representatives from doing exactly what their constituents expect them to do - serve as a check on the functions of the other branches of government – for fear of being sued.

[4] Thus, where Public Officers Law § 18 applies, even a municipality's threshold determination that employees were acting within the scope of their duties is not determinative of indemnification because the finder of fact may ultimately conclude that the employees were liable for intentional wrongdoing/intentional torts. *Coker v. City of Schenectady*, 200 A.D.2d 250 (3d Dept. 1994).

[5] Local Law No. 3 became effective in 1998 and has not been amended or revised since.

[6] Public Officers Law § 18 permits a successful petitioner to recover attorney's fees incurred in defending a third-party action; however, it does not allow an award of fees incurred in the proceeding to compel compliance with Public Officers Law § 18, itself, in contrast to Local Law No. 3. *See Dreyer v. City of Saratoga Springs*, 21 Misc. 3d 1108(A) (Sup. Ct. 2006), *aff'd*, 43 A.D.3d 586 (3d Dept. 2007).

[7] Generally, upon a denial of a motion to dismiss a petition, the Respondents shall be afforded the opportunity to serve an answer to the petition. *See* CPLR 7804(f). However, where, as in this case, the issues have been fully presented in the moving papers and no purpose would be served, or prejudice result, by giving the Respondents the opportunity to serve an answer, the Court may decide the petition on its merits at the motion stage. *Doughtery v. Mammina*, 261 A.D.2d 400 (2d Dept. 1999); *Wood v. Glass*, 226 A.D.2d 387 (2d Dept. 1996); *Briedis v. Village of Tuxedo Park*, 156 A.D.2d 744 (2d Dept. 1989).

14

[* 14]