James F. Niehoff, J.
The plaintiff, Edith McQueen, was admitted to Nassau County Medical Center on May 18, 1971 because of a fractured humerus. At that time she was treated by the defendant Dr. Peter Salzer. Plaintiff remained in the hospital until May 22, 1971 when she was discharged. On December 1, 1971 Mrs. McQueen returned to the hospital. According to the complaint, on that occasion she was examined and treated by Dr. Frank Hudak, who diagnosed her condition and found the healing of the fracture to be good, and discharged her. The complaint further alleges that while on her December 1, 1971 visit to the medical center, defendant Dr. Avelino Maitem was requested to make a radiological examination of plaintiff’s right arm. On the same day, he reviewed the X ray of the fracture and reported that the fracture was not knitting in a proper union and further reported that the bone formation at the fracture site was relatively poor and requested a follow-up examination. Nevertheless, he discharged the plaintiff.
Subsequently, on April 24, 1973, Mrs. McQueen allegedly discovered that the humerus and fracture did not knit properly, with the result that there is now a permanent nonunion of the separated fragments of the bone.
Within 90 days thereafter, to wit, on June 29, 1973 plaintiffs served their notice of claim on the County of Nassau claiming negligence and malpractice on the part of the Nassau County Medical Center. No notice of claim was ever served upon any of the individual physicians named as defendants.
On September 12, 1973 the County of Nassau served a subpoena upon the plaintiff requiring her to submit to an *867 examination pursuant to section 50-h of the General Municipal Law. The requested examination of the plaintiff was adjourned on a number of occasions and had not been held as of August 15, 1975, the date of this motion.
Defendants now seek an order dismissing the complaint pursuant to CPLR 3211 on the following grounds: (1) that plaintiffs have failed to compl:r with section 50-e of the General Municipal Law in that plaintiffs served the notice of claim later than 90 days after the date of occurrence of the alleged malpractice; (2) that as to the defendants, Peter Salzer, Avelino Maitem and Frank Hudak, plaintiffs failed to comply with section 50-d of the General Municipal Law and section 52 of the County Law in that said individual defendants were never served with a copy of the notice of claim; and (3) that plaintiffs have failed to comply with section 50-h of the General Municipal Law in refusing to appear for examination before commencing their action.
Plaintiffs concede that they have failed to comply with section 50-d of the General Municipal Law and section 52 of the County Law by not serving the individual defendants with a copy of their notice of claim and acknowledge that the motion should be granted to the extent of dismissing the action against the individual defendants. Accordingly, the complaint against defendants Salzer, Maitem and Hudak is dismissed.
Plaintiffs argue that. the portion of defendant’s motion which is based on the lateness of their notice of claim must be denied since the notice of claim was served within 90 days of the discovery by plaintiff Edith McQueen of internal bodily damage allegedly caused by the defendants.
Without question the notice of claim was served more than 90 days from the date of last treatment. Subdivision 1 of section 50-e of the General Municipal Law requires a notice of claim to "be given within ninety days after the claim arises.” (Emphasis mine.) The threshhold question which must be decided is when the claim of plaintiff Edith McQueen arose. That is, did plaintiff’s claim arise (her cause of action accrue) as of the last date of treatment as urged by the defendants or did plaintiff’s claim arise as of the date of discovery of the injury by virtue of the fact that the injury allegedly sustained consisted of internal bodily damage?
It has long been held that a cause of action for malpractice accrues when the last act of malpractice is performed (Conklin *868 v Draper, 254 NY 620). Two exceptions have been made to that rule. The exceptions exist where there is continuous treatment of a patient (Borgia v City of New York, 12 NY2d 151), inapplicable herein, and where a foreign object has been negligently left in the patient’s body (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427) equally inapplicable to the case at bar.
In Flanagan (supra, p. 431) the Court of Appeals held that "where a foreign object has negligently been left in the patient’s body, the Statute of Limitations will not begin to run until the patient could have reasonably discovered the malpractice.”
Plaintiffs contend that the discovery rule should be extended and made applicable to the facts of the case at bar. In support of their contention, they rely upon Le Vine v Isoserve, Inc. (70 Misc 2d 747) and Dobbins v Clifford (39 AD2d 1).
In the Le Vine case, the plaintiffs sought to recover for injuries and damages due to radiation which was allegedly caused by a defective isotope. The action was instituted more than six years after exposure to the isotope and a motion was made to dismiss upon the ground that the action was barred by the Statute of Limitations. Mr. Justice John T. Casey of Albany County denied that motion. He held (p 751) that the rationale for limiting the "discovery rule” of the Flanagan case to foreign objects is the fear of specious claims by disgruntled patients and that the "availability of the isotope or the reports concerning it obviate the danger of a specious claim insofar as the defective nature of the isotope is concerned.” He then went on to say (pp 751-752): "This being so, the problems involved in connecting the negligence with the injuries are better left to trial rather than ipso facto depriving the plaintiffs of their opportunity to surmount those problems.”
In the Dobbins case the plaintiff underwent an operation on March 10, 1966 for the removal of his spleen. Plaintiff claimed that in January, 1970, he discovered that his pancreas had been severely damaged during the course of the operation and on February 23, 1970 he commenced an action for malpractice. The Appellate Division, Fourth Department, affirmed the denial of defendant’s motion to dismiss the complaint under the three-year Statute of Limitations and extended the Flanagan "discovery rule” to cover the situation there present "since the same fundamental factors are present in each. *869 They are: an act of malpractice committed internally so that discovery is difficult; real evidence of the malpractice in the form of the hospital record is available at the time of suit; professional diagnostic judgment is not involved, and there is no danger of false claims.” (pp 3-4).
I do not agree with the extension or expansion of the "discovery rule” as announced in either Le Vine or Dobbins.
Last year in the case of Fonda v Paulsen (79 Misc 2d 936, 940, revd on other grounds 46 AD2d 540) Mr. Justice John J. Larkin of the Supreme Court, Albany County, had the following to say concerning the Dobbins case with which I am in full accord: "This court does not feel the expansion of the 'foreign object’ rule in Dobbins (supra) conforms to the very narrow holding of Flanagan (supra). The Court of Appeals specifically mentioned and failed to adopt a broad discovery test, then the law in 11 jurisdictions in this country, for all malpractice cases regardless of whether a foreign object is involved. The court specifically adopted a limited discovery rule applicable to cases where a foreign object, such as the surgical clamps in issue therein, is negligently left in the patient’s body (Flanagan, supra, pp 431-432). It is the conclusion of this court that the Flanagan rule does not provide for the characterization of an injured pancreas, as in Dobbins * * * as a 'foreign body’ so as to toll the running of the statute until its discovery.”
Plaintiff Edith McQueen claims that defendants caused her internal bodily damage — more particularly, the permanent nonunion of separated fragments of plaintiff’s fractured humerus, due to defendants’ failure to set the bone and fracture in a proper manner so as to cause said fragments to knit in a proper fashion.
In my judgment, the narrow "foreign object” rule of the Flanagan case does not cover a factual situation such as that outlined by the present plaintiff and the Flanagan holding cannot properly be extended to this case.
In Schiffman v Hospital for Joint Diseases (36 AD2d 31, mot for lv to app den 29 NY2d 483) the allegation was that biopsy slides were misread in 1959 as indicating malignancy resulting in unnecessary radiation therapy causing personal injury to the patient. The action was brought in 1969 based upon a claimed discovery of the error in 1967. The Appellate Division, Second Department characterizing the case as one of misdiagnosis refused to extend the Flanagan rule to that situation notwithstanding the existence of the biopsy slides themselves *870 as evidence of the malpractice. Mr. Justice Hopkins speaking for that court specifically rejected Schiffman’s contention that the discovery rule applies whenever the proof of the malpractice is clear and retains its identity, citing the language of the majority opinion in Flanagan that the modification of the general rule with respect to malpractice actions was clearly phrased to apply only to an action based on the negligent failure to remove a foreign object. In Randall v Weber (45 AD2d 731) the Second Department reaffirmed its position and adhered to Schiffman by refusing to apply the "foreign objects-discovery rule” to cases of negligent diagnosis or treatment.
Essentially, the complaint herein alleges that the medical care, diagnosis, treatment, surgery, discharge and after care rendered by the defendants were performed in a negligent and careless manner. Specifically, plaintiffs accuse one of the physicians of improperly treating plaintiff by failing to set the bone in a proper manner. A second physician is alleged to have been negligent in his diagnosis and conclusions with respect to the plaintiff and in allowing her discharge from the hospital. The third physician is alleged to have been negligent in discharging the plaintiff from the hospital prematurely in light of his own findings with respect to the fracture site.
It seems to me that the acts constituting the alleged negligence herein can, at most, be characterized as negligent diagnosis or treatment and cannot be characterized as a "foreign object” so as to alter or toll the date upon which plaintiff’s claim arose. Moreover, there is no basis under the present law for a sweeping holding to the effect that the "discovery rule” applies whenever the negligent treatment or diagnosis relates to the internal parts of the body and there are X rays or hospital reports to document the malpractice.
It is true that the Flanagan holding accepted the basic unfairness to the patient of imputing to him the knowledge which he could not have possessed because of the concealment of the object within his body. However, the Appellate Division held that basic unfairness to be absent in the Schiffman case (p 34) because "the biopsy slides have been known to exist throughout.” Thus, it would appear from a reading of the Schiffman case that the presence of the documentation does not assist the patient in extending periods of limitation but, if anything, militates against the patient doing so because knowledge was available to him through those records.
In this case it should be noted that the "basic unfairness” of *871 imputing knowledge to a plaintiff which he or she could not have possessed because of the concealment of a foreign object within the body which permeated Flanagan but was absent in Schiffman, is also absent in this case. I say this because plaintiff’s complaint makes it abundantly clear that as of December 1, 1971 the hospital records disclose that Dr. Maitem reported that the X ray made of her fracture indicated that her humerus fracture was not knitting in a proper union, that the bone formation at the fracture site was relatively poor, and a follow-up examination was in fact requested by said doctor.
Since plaintiffs failed to serve a notice of claim within a period of 90 days after their claim arose, they did not comply with section 50-e of the General Municipal Law and the complaint against the defendant County of Nassau must be dismissed.
I am not unmindful of the fact that as a result of section 50-e of the General Municipal Law a particular victim will often times not discover the wrong committed against his or her person until after the 90-day period has run and barred any recovery. I am equally cognizant of the unjust and inequitable consequences which result in a case such as the one at bar where plaintiff has, in fact, discovered the wrong within the applicable Statute of Limitations period. However, I am equally aware that the language and intent of section 50-e of the General Municipal Law is clear and unambiguous and that the resolution of any inequities or unjust consequences should only be accomplished by legislative action.
In view of my holding that the "discovery rule” of Flanagan is inapplicable to this case, it is unnecessary to consider the further argument advanced by the defendants that the action should be dismissed because plaintiffs have failed to comply with section 50-h of the General Municipal Law.