Philip **HOLDRIDGE, Individually and as husband of Joanne S. Allen Holdridge, and Joanne S. Allen Holdridge, Plaintiffs,**

v.

**HEYER-SCHULTE CORPORATION OF SANTA BARBARA, Defendant.**

**No. 76–CV–130.**

United States District Court,
N. D. New York.

Nov. 7, 1977.

Roger Scott, Camillus, N. Y., for plaintiffs.

Sugarman, Wallace, Manheim & Schoenwald, Alan J. Goldberg, of counsel, Syracuse, N. Y., for defendant.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

This is a products liability suit brought against the manufacturer of an inflatable mammary prosthesis (sometimes called a Jenny prosthesis) which was intended for use in the reconstruction of the female breast area following a subcutaneous mastectomy. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. There are now before the Court defendant's motion for summary judgment and plaintiffs' motion for leave to amend their complaint.

In their original complaint, filed on March 24, 1976, plaintiffs claim that plaintiff Joanne S. Allen Holdridge suffered serious injuries after an allegedly defective prosthetic device was implanted in her right breast. Plaintiffs contend that the prosthetic device in question was manufactured by the defendant prior to July 7, 1971, and was removed from plaintiff Joanne Holdridge's body during surgery on May 3, 1972, at which time a new prosthesis was implanted. Plaintiffs claim that, after the surgery in May of 1972, the device, which had originally been inserted in Mrs. Holdridge's body, was found to be defective. Joanne Holdridge seeks damages for severe shock to her nervous system, internal injuries, severe pain and mental anguish, and loss of occupation, while her husband, Philip Holdridge, seeks damages for mental anguish and loss of his wife's companionship and society.

On the basis of the allegations in the original complaint, defendant moved for summary judgment pursuant to Fed.R. Civ.P., Rule 56, on the ground that the cause of action was barred by the statute of limitations.

Plaintiffs subsequently moved for leave to amend their complaint. In their proposed amended complaint, filed on October 29, 1976, plaintiffs contend that the injuries suffered by plaintiff Joanne Holdridge were caused by a series of allegedly defective prosthetic devices which were manufactured by the defendant and were im-

planted in Joanne Holdridge's body at various times between July 6, 1971 and June 11, 1973. Plaintiffs claim that two Jenny prosthetic devices were implanted in Mrs. Holdridge's body on or about July 6, 1971. They allege that, because of various complications, the prosthesis in Mrs. Holdridge's right breast was removed on or about May 2, 1972, and was replaced by a new Jenny prosthesis on that date. It is contended that this new prosthesis in the right breast was removed on or about June 9, 1972, and was replaced by another Jenny prosthesis on or about October 12, 1972. It is further alleged that, because of various complications, the prosthesis in Joanne Holdridge's left breast was removed on or about June 11, 1973, and was either repaired and re-inserted or replaced with a new Jenny prosthesis.[1] Plaintiffs base their claim in their proposed amended complaint upon five separate causes of action: negligence, strict products liability, implied warranty, express warranty, and fraudulent misrepresentation.

## THE AMENDED COMPLAINT

Before considering defendant's motion for summary judgment, the Court feels that it is necessary to consider plaintiffs' motion for leave to amend their complaint.

■ Fed.R.Civ.P., Rule 15(a), provides that after a responsive pleading has been served, a party may amend its pleading only by leave of court or by written consent of the adverse party. The rule also provides that leave shall be freely given when justice so requires. It has frequently been held that the grant or denial of a motion for leave to amend is within the sound discretion of the district court. *See, e. g., Freeman v. Marine Midland Bank-New York*, 494 F.2d 1334 (2d Cir. 1974); *Scranton Volunteer Fire Co. v. U. S. Fidelity & Guaranty Co.*, 450 F.2d 775 (2d Cir. 1971); *Crown Coat Front Co. v. United States*, 395 F.2d 160 (2d Cir. 1968), *cert. denied*, 393

U.S. 853, 89 S.Ct. 123, 21 L.Ed.2d 122 (1968). The major factor a court should consider in deciding whether to grant leave to amend is whether the opposing party will suffer prejudice if leave is granted. *Zenith Radio Corporation v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77, *rehearing denied*, 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971); *United States v. Hougham*, 364 U.S. 310, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960); *Middle Atlantic Utilities Co. v. S.M.W. Development Corporation*, 392 F.2d 380 (2d Cir. 1968).

■ This Court is of the opinion that the defendant will not be prejudiced if plaintiffs' motion for leave to amend their complaint is granted. There has not been undue delay by the plaintiffs in seeking leave to amend, as they made their motion approximately seven (7) months after the action was commenced. Moreover, there is no indication that the defendant has, in the meantime, changed its position in a way that would affect its ability to defend this lawsuit. Therefore, the Court will grant plaintiffs' motion for leave to amend their complaint.

The Court feels that defendant's motion for summary judgment should now be considered as being directed to plaintiffs' amended complaint, even though the motion was originally directed to the initial complaint. Defendant received notice of the facts and theories that the plaintiffs are now relying upon, from the plaintiffs' answers to interrogatories and from the plaintiffs' memorandum of law in opposition to the motion for summary judgment. It, therefore, had an opportunity to rebut these facts and theories, and in its reply memorandum of law, it did, in fact, attempt to do so.

### Relation Back

The basic disagreement between the parties on defendant's motion for summary judgment is over the question of when

---

1. The Court observes that there is a one day difference between the date alleged in the amended complaint and the date appearing in the medical records for the implantation of the first three prosthetic devices. Except where otherwise indicated, the Court will refer to the dates as alleged in the amended complaint.

plaintiffs' causes of action accrued under the various theories being alleged. However, before considering the accrual dates for the various causes of action, the Court feels that it should consider the date on which the statute of limitations stopped running.

■ As a general rule, the statute of limitations stops running on the date that a claim is interposed. In federal court, a claim is interposed when the complaint containing the claim is filed. Rule 3, Fed.R. Civ.P.; *Sylvestri v. Warner & Swasey Co.*, 398 F.2d 598 (2d Cir. 1968). However, Fed. R.Civ.P., Rule 15(c), provides that, in certain circumstances, the allegations contained in an amended complaint will relate back to the date of the original complaint. New York, whose law applies to the substantive issues in this case, also has a relation-back rule. New York CPLR § 203(e). While state law must be applied in a diversity case to determine whether an action is barred by the statute of limitations, *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), most courts considering the issue have held that the federal rule as to relation back applies even in a diversity case, since the question of relation back of amendments to pleadings is properly a matter of practice and procedure and is specifically dealt with in the Federal Rules of Civil Procedure. *Welch v. Louisiana Power & Light Co.*, 466 F.2d 1344 (5th Cir. 1972); *Loudenslager v. Teeple*, 466 F.2d 249 (3d Cir. 1972); *Applied Data Processing, Inc. v. Burroughs Corporation*, 58 F.R.D. 149 (D.Conn.1973). *See also Bethlehem Fabricators, Inc. v. British Overseas Airways Corporation*, 434 F.2d 840 (2d Cir. 1970).[2] Therefore, this Court will apply the federal rule as to relation back.

■ Under Rule 15(c), an amendment relates back to the date of the original pleading whenever "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The major consideration in deciding whether an amendment relates back is whether adequate notice is given to the opposing party by the general fact situation alleged in the original pleading. *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d Cir. 1973), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Williams v. United States*, 405 F.2d 234, 236–37 (5th Cir. 1968); 3 *Moore's Federal Practice* ¶ 15.-15[3] (1974). The doctrine of relation back applies when an amendment adds a new theory of recovery based on the same transaction or occurrence as originally pleaded. *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479 (6th Cir. 1973); *Martin v. Virgin Islands National Bank*, 455 F.2d 985 (3d Cir. 1972); *Bethlehem Fabricators, Inc. v. British Overseas Airways Corporation, supra.* Similarly, the doctrine applies to correct specific factual details or to make more specific what has already been alleged. *Moses v. Michael*, 292 F.2d 614 (5th Cir. 1961); *Kelcey v. Tankers Co.*, 217 F.2d 541 (2d Cir. 1954); *Michelsen v. Penney*, 135 F.2d 409 (2d Cir. 1943). However, an amendment will not relate back if it sets forth a new set of operational facts. *Rosenberg v. Martin, supra; Griggs v. Farmer*, 430 F.2d 638 (4th Cir. 1970); *Young v. Pick Hotels-Washington Corporation*, 136 U.S.App.D.C. 405, 420 F.2d 247 (1969).

■ In the present case, it appears that the theory of recovery relied upon by the plaintiffs in their original complaint was

**2.** In general, if a question is covered by a provision of the Federal Rules of Civil Procedure, the federal rule, rather than state law will control. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). It is unnecessary to consider if there are any circumstances in which a federal rule, which arguably deals with a particular question, might be found to be not controlling.

Two points should be noted: (1) the kind of notice contemplated by Rule 15(c) fulfills the primary purpose behind a state statute of limitations—to protect a defendant from having to defend against stale claims by requiring notice of the claim within a certain period of time, 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1503, at 535 (1971), and (2) the New York rule as to relation back, CPLR § 203(e), is very similar to the federal rule and might very well lead to the same result in this case.

either implied warranty or strict products liability. It is clear that the additional theories of recovery alleged in the amended complaint would relate back with respect to injuries resulting from the prosthesis implanted in Joanne Holdridge's right breast in July of 1971, since the insertion of this device was specifically mentioned in the first complaint.

However, this Court is of the opinion that the allegations contained in the amended complaint regarding additional prosthetic devices implanted in Joanne Holdridge's body will not relate back to the date of the original complaint. The original complaint gave the defendant notice that it was being sued for injuries arising from an allegedly defective prosthesis implanted in Mrs. Holdridge's right breast in July of 1971, but this complaint did not give the defendant notice of the additional prosthetic devices which are now alleged to have contributed to the plaintiffs' injuries. The first complaint did make reference to a new prosthesis that was inserted in Joanne Holdridge's right breast on May 3, 1972, after the removal of the one that had been inserted in July of 1971, but the first complaint did not allege that this new prosthesis was defective, nor did it indicate that Mrs. Holdridge suffered injuries from the new prosthesis. The remaining prosthetic devices were not mentioned in any way in the original complaint. The Court feels that the allegations involving additional prosthetic devices contained in the amended complaint involve a new set of operational facts and, therefore, it holds that the relation back doctrine does not apply to them.

■ The Court notes that the defendant did receive notice of the additional allegations which the plaintiffs are now relying upon, from the plaintiffs' answers to interrogatories and from the plaintiffs' memorandum of law in opposition to the motion for summary judgment, but the Court believes that, in applying the relation back doctrine, it must look to determine if adequate notice was supplied by the original complaint, rather than by papers which were subsequently filed in the action.

The Court's interpretation is supported by the cases construing Rule 15(c). In *Tessier v. United States,* 269 F.2d 305 (1st Cir. 1959), the court refused to apply the doctrine of relation back to an amendment alleging continuing acts of negligence from 1947 to 1954, where the original complaint only alleged negligence in 1947. In *Jackson v. Ideal Publishing Co.,* 274 F.Supp. 318 (E.D.Pa.1967), the court held that where a complaint for libel alleged publication in the February issue of a magazine, an amendment alleging publication in the March and April issues of the same magazine did not relate back. Likewise, in *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.,* 395 F.Supp. 234 (N.D.Ill.1974), the court said that the alleged infringement of one patent was not the same conduct, transaction or occurrence as the alleged infringement of another patent and so refused to apply the relation back doctrine to an amended complaint alleging the infringement of an additional patent by the defendant.

Accordingly, the Court holds that, with respect to injuries resulting from the prosthesis implanted in Joanne Holdridge's right breast in July of 1971, the causes of action were interposed, so as to stop the running of the statute of limitations, when the original complaint was filed on March 24, 1976. The Court further holds that, with respect to injuries resulting from the remaining prosthetic devices inserted in Mrs. Holdridge's body, the causes of action were interposed, for statute of limitations purposes, when the amended complaint was filed on October 29, 1976.

*Fraudulent Misrepresentation*

In their amended complaint, plaintiffs allege five causes of action—negligence, strict products liability, implied warranty, express warranty, and fraudulent misrepresentation. For purposes of determining when the causes of action accrued, the Court will consider the two tort causes of action (negligence and strict products liability) and then will consider the two warranty causes of action.

The Court does not believe that the cause of action for fraudulent misrepresentation should be treated as a separate cause of action for statute of limitations purposes. In determining what period of limitations applies, the essence or gravamen of the action controls, rather than the form in which it is pleaded. *State v. Cortelle Corporation*, 38 N.Y.2d 83, 378 N.Y.S.2d 654, 341 N.E.2d 223 (1975); *Schmidt v. Merchants Despatch Transportation Co.*, 270 N.Y. 287, 200 N.E. 824 (1936). The essence or gravamen of the plaintiffs' complaint in the present case is that the defendant manufacturer placed a defective product on the market which caused injury to the plaintiffs. The New York Court of Appeals, in *Victorson v. Bock Laundry Machine Co.*, 37 N.Y.2d 395, 400, 373 N.Y.S.2d 39, 41, 335 N.E.2d 275, 277 (1975), noted that, depending on the factual context in which the claim arises, there are four possible theories which a plaintiff may use to state a cause of action against a manufacturer of a defective product—negligence, strict products liability, and contract liability, express and implied.[3] Therefore, this Court believes that the period of limitations for the cause of action based on fraudulent misrepresentation should not be any longer than the period allowed under the four theories sanctioned in *Victorson*, and so the Court will not treat the fraudulent misrepresentation claim as a separate cause of action for purposes of this motion.[4]

## TORT CAUSES OF ACTION

The period of limitations for personal injury actions in New York is three years. New York CPLR § 214 (¶ 5). This period of limitations clearly applies to a negligence cause of action. *City of Buffalo v. Maggio*, 21 N.Y.2d 1017, 291 N.Y.S.2d 1, 238 N.E.2d 494 (1968); 1 Weinstein, Korn & Miller, *New York Civil Practice* ¶ 214.12 (1970). A recent decision of the New York Court of Appeals indicates that this provision also applies to a strict products liability cause of action. *Victorson v. Bock Laundry Machine Co., supra.*

A cause of action for personal injury resulting from negligence normally accrues at the time that the wrong is committed or the injury is sustained. This is true even though the injured party is unaware of the injury at such time and even though actual damage is not suffered by the injured party until a later time. *Schwartz v. Heyden Newport Chemical Corporation*, 12 N.Y.2d 212, 237 N.Y.S.2d 714, 188 N.E.2d 142, *amended*, 12 N.Y.2d 1073, 239 N.Y.S.2d 896, 190 N.E.2d 253, *cert. denied*, 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032 (1963); *Schmidt v. Merchants Despatch Transportation Co., supra*; 36 *N.Y. Jur., Limitations and Laches* § 87 (1964). The same accrual rule applies to a personal injury cause of action based upon strict products liability. *Victorson v. Bock Laundry Machine Co., supra.*

If the normal accrual rules are followed in the present case, then the causes of action for negligence and strict products liability would be time barred with respect to all the alleged injuries. For statute of limitations purposes, the wrong in this case was committed (or the injuries were sustained) when the prosthetic devices were implanted in Joanne Holdridge's body, and the original and amended complaints were each filed more than three years after the insertion of the devices which were alleged in each respective complaint.[5]

---

3. The court indicated that a cause of action in contract might be based upon warranty or other agreement by the manufacturer.

4. As will be indicated subsequently, this Court has decided that some of the tort or warranty causes of action asserted by the plaintiffs are not barred by the statute of limitations. The Court will permit the plaintiffs to maintain the claim for fraudulent misrepresentation to the extent that they can establish that the New York courts would recognize such a claim under one of the theories of recovery which this Court has decided is not time barred.

5. The original complaint was filed more than three years after the insertion of the prosthesis in Mrs. Holdridge's right breast on July 6, 1971. Likewise, the amended complaint was filed more than three years after the insertion of the remaining prosthetic devices.

*Continuous Torts*

 Plaintiffs have advanced several theories as to why their causes of action should accrue on a date later than that indicated by the normal accrual rules discussed above. One such theory is the doctrine of continuous torts. It has been held that where the defendant's wrong is a continuous or recurring one, a new cause of action accrues with each new injury, thus allowing the plaintiff to bring suit even though the defendant's wrong commenced at a time beyond the limitations period. *509 Sixth Avenue Corporation v. New York City Transit Authority,* 15 N.Y.2d 48, 255 N.Y.S.2d 89, 203 N.E.2d 486 (1964); *Meruk v. New York,* 223 N.Y. 271, 119 N.E. 571 (1918); *Colrick v. Swinburne,* 105 N.Y. 503, 12 N.E. 427 (1887). This doctrine has most frequently been applied in cases of trespass or nuisance where there is the continued existence of a harmful condition. *509 Sixth Avenue Corporation v. New York City Transit Authority, supra; Meruk v. New York, supra; Colrick v. Swinburne, supra.*

In *Sadowski v. Long Island Railroad Co.,* 292 N.Y. 448, 55 N.E.2d 497 (1944), the doctrine of continuous torts was applied to a personal injury action where an employee brought suit for injuries sustained from breathing silica dust while employed by the defendant railroad. The court in *Sadowski* held that the cause of action accrued at the time that the employee left the railroad's employ, rather than at the time that the employee first started breathing the silica dust, since the railroad had continuously failed to provide the plaintiff with a reasonably safe place in which to work. The doctrine of continuous torts has also been applied to an action for zoning violations, *Fabini v. Kammerer Realty Co.,* 14 Misc.2d 95, 175 N.Y.S.2d 964 (S.Ct. Westchester Co. 1958), and to an action by shareholders of a parent corporation for dissolution of a subsidiary, *Hayman v. Morris,* 46 N.Y.S.2d 482 (Sup.Ct. N.Y.Co. 1943).

The present case is distinguishable from the cases in which the doctrine of continuous torts has previously been applied. In the cases to which this doctrine has been extended, the defendant's actions in causing the invasion of the plaintiff's rights were not separable, and so it could not be said that the injury occurred at any particular point in time. On the other hand, in the present case, the defendant's actions are separable, and the injury can be said to have occurred when the various prosthetic devices were implanted in Joanne Holdridge's body. Thus, the alleged tortious conduct in this case was not truly continuous in nature.

*Foreign Object Discovery Rule*

 Another theory advanced by the plaintiffs as to why an accrual rule, different from that normally applied, should be looked to in this case is the foreign object discovery rule which was adopted by the New York Court of Appeals in *Flanagan v. Mount Eden General Hospital,* 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969). In *Flanagan,* a physician left surgical clamps in the plaintiff's body in 1958, and the presence of the clamps was not discovered until 1966, when they were revealed by an X-ray examination. Shortly thereafter, a suit was commenced against the physician. The court in *Flanagan* held that the action was timely, stating that "where a foreign object has negligently been left in the patient's body, the Statute of Limitations will not begin to run until the plaintiff could have reasonably discovered the malpractice." 24 N.Y.2d at 431, 301 N.Y. S.2d at 27, 248 N.E.2d at 873. The court distinguished the case before it from those cases involving negligent medical treatment or medication. The court indicated that the application of a discovery rule to foreign object malpractice cases was justified because there was no opportunity for the patient to feign his injury and there was no possible causal break between the negligence of the doctor or hospital and the patient's injury. In addition, the court noted that the patient's claim rested upon tangible evidence still in existence and did not raise questions of credibility or professional diagnostic judgment or discretion. 24 N.Y.2d at 430–31, 301 N.Y.S.2d at 26–27, 248 N.E.2d at 872–873.

It is unclear from the New York cases how far the foreign object discovery rule should be extended. Several cases have rejected the application of this rule to actions where the claim involved negligent diagnosis or treatment. *Randall v. Weber,* 45 A.D.2d 731, 356 N.Y.S.2d 1016 (2d Dept. 1974); *Schiffman v. Hospital for Joint Diseases,* 36 A.D.2d 31, 319 N.Y.S.2d 674 (2d Dept. 1971), *mot. for lv. to app. den.,* 29 N.Y.2d 483, 324 N.Y.S.2d 1028, 273 N.E.2d 576 (1971); *McQueen v. County of Nassau,* 83 Misc.2d 865, 373 N.Y.S.2d 767 (S.Ct. Nassau Co. 1975). For example, in *McQueen v. County of Nassau, supra,* the court held that an improperly healed broken arm was not a "foreign object" and that the discovery rule did not apply where the doctor allegedly made a misdiagnosis by telling the patient that the broken arm had been properly healed. In other cases, courts have rejected the application of the foreign object discovery rule to malpractice actions brought against architects where the defects were discovered sometime after the completion of the building. *Sears, Roebuck & Co. v. Enco Associates, Inc.,* 54 A.D.2d 13, 385 N.Y.S.2d 613 (2d Dept. 1976); *Sosnow v. Paul,* 43 A.D.2d 978, 352 N.Y.S.2d 502 (2d Dept. 1974), *aff'd,* 36 N.Y.2d 780, 369 N.Y. S.2d 693, 330 N.E.2d 643 (1975).

A few cases appear to have extended the foreign object discovery rule beyond the facts of the *Flanagan* case. The court in *Dobbins v. Clifford,* 39 A.D.2d 1, 330 N.Y. S.2d 743 (4th Dept. 1972) applied this rule to a case where the injury to the plaintiff's pancreas was not discovered until several years after the physician had caused the injury during an operation for the removal of the plaintiff's spleen. In *Murphy v. St. Charles Hospital,* 35 A.D.2d 64, 312 N.Y. S.2d 978 (2d Dept. 1970), the court held that a prosthesis that had been inserted in a patient's right hip and femur was a "foreign object" and that the cause of action accrued at the time the prosthesis broke, which was several years after it had been inserted. On the other hand, the court in *Weber v. Scheer,* App.Div., 395 N.Y.S.2d 183 (1st Dept. 1977) indicated that a prosthetic device would be treated as a foreign object for purposes of tolling the statute of limitations only where there was a strong causal link between the injury and the alleged malpractice. The court in *Weber* rejected the application of the foreign object discovery rule to injuries caused by a prosthetic device placed in the plaintiff's ear a number of years earlier, allegedly without the plaintiff's knowledge or consent, and which had not been removed when it no longer served a useful purpose. The court stated:

> In both *Flanagan* and *Murphy* the injuries were the obvious result of the malpractice claimed, and there was no such break in the chain of causal relation as exists here. In considering the time frame and the many causes of meningitis, there would have been numerous possible breaks in any alleged chain of causation.

395 N.Y.S.2d at 184.

At least one lower court in New York has applied the foreign object discovery rule to a negligence case not involving medical malpractice. In *LeVine v. Isoserve, Inc.,* 70 Misc.2d 747, 334 N.Y.S.2d 796 (S.Ct. Albany Co. 1972), the court applied the discovery rule to an action brought against the supplier of an allegedly defective isotope where the plaintiffs did not discover that they were contaminated with alpha radiation until several years after the delivery of the isotope.

Defendant argues that the discovery rule does not apply because New York CPLR § 214–a states that a "foreign object" shall not include a prosthetic aid or device. However, it is unnecessary to consider the applicability of this provision to the present action as it became effective on July 1, 1975, and was made applicable only to "any act, omission or failure occurring on or after that date." 1975 New York Laws, c. 109 § 37. The alleged wrongful acts in this case occurred before that date.

In any event, this Court is of the opinion that the New York courts would not apply the foreign object discovery rule to the present case. Some, but not all, of the factors which the court in *Flanagan* con-

sidered significant in deciding that the discovery rule was appropriate to apply are present in this case. The opportunity for a feigned injury in this case is lessened by the fact that at least part of the tangible evidence is still in existence (the prosthetic devices still implanted in Joanne Holdridge's body). However, the causal link between the allegedly defective product and the plaintiffs' injuries is weaker in this case than in the *Flanagan* case or in the subsequent lower court cases which have applied this doctrine since, in the present case, the plaintiffs' injuries might have been caused by negligence of the attending physician, by Joanne Holdridge's physiological condition, or by defects in the prosthetic devices. Also, expert testimony will probably be needed in this case to establish whether the prosthetic devices in question were, in fact, defective.

### Continuous Treatment Doctrine

Another theory advanced by the plaintiffs as to why the normal rule for determining the accrual of a cause of action should be deviated from is the continuous treatment doctrine, which was enunciated by the New York Court of Appeals in *Borgia v. City of New York*, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962). In *Borgia*, the court held that when there has been a course of continuous medical treatment, a cause of action for malpractice accrues at the end of the continuous treatment if the treatment has been for the same illness or injury out of which the claim for malpractice arose. The court indicated that such a rule was justified because "[i]t would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent . . ." 12 N.Y.2d at 156, 237 N.Y.S.2d at 321–22, 187 N.E.2d at 779. The court emphasized that the treatment must be for the same illness or injury and said that the mere continuity of the physician-patient relationship would not be sufficient to toll the statute of limitations.

The continuous treatment doctrine is applicable so long as there has been continued treatment for the same illness or injury out of which the claim for malpractice arose even if there are no further acts of malpractice in the continued treatment. *O'Laughlin v. Salamanca Hospital District Authority*, 36 A.D.2d 51, 319 N.Y. S.2d 128 (4th Dept. 1971); *Gross v. Wise*, 18 A.D.2d 1097, 239 N.Y.S.2d 954 (2d Dept. 1963). However, if the services performed are merely intermittent, this doctrine will not be applied. *Davis v. City of New York*, 38 N.Y.2d 257, 379 N.Y.S.2d 721, 342 N.E.2d 516 (1975) (cancer detection center, which performed a diagnostic examination on the decedent in February 1968 and again in February 1969, did not render continuous treatment). *See also McQuinn v. St. Lawrence County Laboratory*, 28 A.D.2d 1035, 283 N.Y.S.2d 747 (3d Dept. 1967). While the continuous treatment doctrine has usually been applied in actions brought against physicians, it has also been applied in malpractice actions involving other professionals. *Siegel v. Kranis*, 29 A.D.2d 477, 288 N.Y.S.2d 831 (2d Dept. 1968) (attorneys); *County of Broome v. Vincent J. Smith, Inc.*, 78 Misc.2d 889, 358 N.Y.S.2d 998 (S.Ct. Broome Co. 1974) (architects); *Wilkin v. Dana R. Pickup & Co.*, 74 Misc.2d 1025, 347 N.Y.S.2d 122 (S.Ct. Allegany Co. 1973) (accountants).

At least one lower court in New York has extended the continuous treatment doctrine beyond the area of malpractice actions against professionals. *Colpan Realty Corporation v. Great American Insurance Co.*, 83 Misc.2d 730, 373 N.Y.S.2d 802 (S.Ct. Westchester Co. 1975). In *Colpan*, the court applied the continuous treatment doctrine to an action brought by an insured against its insurer which had repeatedly refused to defend a suit brought against the insured. The court stated that it could find "no logical basis for distinction between wrongful conduct on the part of professionals and the wrongful breach of a contract by an insurance company." 373 N.Y.S.2d at 805. The court indicated that since the breach was continuous and was related to the original condition of complaint, the ac-

tion should accrue at the culmination of conduct constituting the breach which was the time at which the insured's appeal from the judgment against it was dismissed.

■ The New York courts have not considered the applicability of the continuous treatment doctrine to a manufacturer of a medical device. Therefore, a federal court sitting in a diversity action must make its own determination as to what the state court would probably do if it were faced with the same case. *Ricciuti v. Voltarc Tubes, Inc.*, 277 F.2d 809 (2d Cir. 1960).

The plaintiffs in this case argue that the continuous treatment of the physician attending Joanne Holdridge after her mastectomy should be imputed to the manufacturer of the prosthetic devices used in the course of the physician's treatment. In particular, the plaintiffs emphasize the duty of a manufacturer to warn of subsequently discovered defects and the special relationship between the manufacturer of a sophisticated medical device and the attending physician who administers this device to a patient.

One recent case that should be considered is *Fonda v. Paulsen*, 46 A.D.2d 540, 363 N.Y.S.2d 841 (3d Dept. 1975). *Fonda* involved a malpractice action against three physicians arising out of the failure of the defendants to diagnose properly a cancerous condition. The court held that the continuous treatment of the two physicians who directly treated the plaintiff could be imputed to a pathologist who had allegedly misread a biopsy performed on the plaintiff. The court reached this conclusion, even though the pathologist did not directly treat the plaintiff because "the pathologist should have reasonably expected that his work would be relied on by other practitioners in determining the mode of treatment." 363 N.Y.S.2d at 846. The court stated:

> The nature of a pathologist's work is such that he rarely, if ever, has a direct physician-patient relationship with an individual—in other words, he never treats patients in the conventional sense—but his work is often the basis upon which the nature of subsequent treatments to be

given by the attending physician is determined.

*Id.* The decision in *Fonda* is particularly significant with regard to the present case, since *Fonda* represents a case in which the continuous treatment doctrine was extended to cover a defendant who had not directly treated the patient, but whose work was relied upon by the attending physicians in the course of their treatments.

■ This Court is of the opinion that, in certain circumstances, the New York courts would extend the continuous treatment doctrine to cover manufacturers of medical devices or medications. The Court believes that the continuous treatment of an attending physician would be imputed to the manufacturer of a medical device or medication where the device or medication in question was used as an integral part of the continuous treatment. The underlying rationale of the continuous treatment doctrine—that it is absurd to expect a patient to interrupt a course of treatment by suing the attending physician—applies to the manufacturer of a medical device or medication as well as to a physician if the physician is using this product as an integral part of his treatment. A patient necessarily relies upon his physician's judgment in the use of medical devices and medications and so cannot be expected to bring suit against the manufacturer of such products until the physician's underlying treatment has terminated. It should not be necessary to show that the manufacturer was actually aware that its products were being used in the course of treating a particular individual, so long as it was reasonable for the manufacturer to expect that such use would be made of its products.

On the basis of these principles, the Court holds that the continuous treatment doctrine is applicable to the present case. The medical records establish that Joanne Holdridge's attending physician continued to treat her for the same medical condition from 1971 until March of 1974. In July of 1971, the physician performed a subcutaneous mastectomy on Mrs. Holdridge, at which time he inserted two prosthetic de-

vices in her breasts. He continued to treat her at frequent intervals thereafter for various complications that arose. On June 11, 1973, the physician performed the last operation involving the repair of an old prosthetic device, and he continued to see Mrs. Holdridge on a regular basis and to prescribe medication for her up until March 7, 1974. This continuous treatment should be imputed to the defendant manufacturer. It is clear that the prosthetic devices which it had manufactured were used as an integral part of the physician's continuous treatment of Joanne Holdridge after she had undergone a subcutaneous mastectomy, and it was reasonable for the defendant to expect that its devices, which could be used in the reconstruction of the female breast area, would be used in the treatment of a patient who had undergone this type of surgery.[6]

Accordingly, the Court holds that the plaintiffs' negligence and strict products liability causes of action for injuries resulting from the implantation of all prosthetic devices in question accrued when the continuous treatment of Joanne Holdridge's attending physician terminated in March of 1974. Since the complaints were filed less than three years later, on March 24, 1976, and October 29, 1976, the negligence and strict products liability causes of action are not barred by the statute of limitations and can be maintained for all the alleged injuries.

### WARRANTY CAUSES OF ACTION

■ The period of limitations for causes of action based upon breach of express or implied warranties is governed by the Uniform Commercial Code. This is the clear implication of the New York Court of Ap-

peals' decision in *Victorson v. Bock Laundry Machine Co., supra.* The court in *Victorson* recognized that there were four possible theories of recovery that could be used in a suit against a manufacturer of a defective product—negligence, strict products liability, and contractual liability, express and implied, and it noted that "the Uniform Commercial Code, in treating of the liability of a manufacturer of a defective product, applies only where such liability is predicated on a contractual obligation, express or implied." 37 N.Y.2d at 404 n. 3, 373 N.Y.S.2d at 45 n. 3, 335 N.E.2d at 279 n. 3. A recent Appellate Division case applied the Uniform Commercial Code statute of limitations to a personal injury action based upon breach of warranty. *Ribley v. Harsco Corporation,* 57 A.D.2d 234, 394 N.Y.S.2d 741 (3d Dept. 1977).

The period of limitations contained in the Uniform Commercial Code for breach of warranty, express or implied, is four years. UCC § 2–725(1). The time at which a cause of action for breach of warranty accrues is set forth in UCC § 2–725(2):

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of performance, the cause of action accrues when the breach is or should have been discovered.

Hence, a cause of action for breach of warranty normally accrues when tender of delivery is made. The Court is of the opinion that tender of delivery occurred in the present case at the time that each of the

---

**6.** In the present case, the plaintiffs have alleged that the defendant was aware of the use of its product in the treatment of Joanne Holdridge and that the defendant communicated with the attending physician concerning the use of this product. These allegations, if proven, would tend to indicate that it was reasonable for the defendant to believe that its product was being used as an integral part of the continuous treatment of this particular individual. However, the Court is of the opinion that, without regard

to these factors, it was reasonable for the defendant to assume that its product would be used as an integral part of a patient's treatment due to the very nature of the product in question. The defendant's product is a sophisticated medical device that could be used in the reconstruction of the female breast area, and so the defendant could reasonably expect its product to be used after the type of surgery performed in this case.

prosthetic devices was implanted in Joanne Holdridge's body.

Therefore, if the normal accrual rule is applied, then the express and implied warranty causes of action for injuries resulting from the prosthetic devices implanted in Mrs. Holdridge's body on July 6, 1971, May 2, 1972, and October 12, 1972, would be barred by the statute of limitations, since these claims were interposed more than four years later in either the original or the amended complaint.[7] Plaintiffs allege that on June 11, 1973, the prosthesis in Joanne Holdridge's left breast was either repaired and re-inserted or was replaced with a new prosthesis. If a new prosthesis had been inserted on this date, the warranty causes of action for injuries resulting from this prosthesis would not be time barred, since the amended complaint, in which the claim involving this prosthesis was asserted, was filed less than four years later. However, the Court feels that the medical records establish that a new prosthesis was not inserted on June 11, 1973, but rather that the prosthesis which had already been implanted in the left breast was repaired and re-inserted at this time.[8] This prosthesis had originally been implanted on July 6, 1971, and under normal accrual rules, the cause of action for injuries resulting from the implantation of this device accrued at this time and, therefore, is time barred as it was interposed more than four years later. Hence, if the normal accrual rules are followed, the warranty causes of action would be barred by the statute of limitations for all the alleged injuries.

Plaintiffs argue that the exception to the normal accrual rule set forth in UCC § 2–725(2) is applicable to the present case. This exception applies where a warranty explicitly extends to future performance of the goods and discovery must await the time of performance. In such circumstances, the cause of action accrues when the breach is or should have been discovered. If the exception set forth in UCC § 2–725(2) were found to be applicable to this case, then the breach of warranty causes of action could be maintained for the injuries resulting from the implantation of all the prosthetic devices in question, provided that the plaintiffs are able to prove that the date they should have discovered the breach of warranty was less than four years before the respective complaints were filed.

The principles set forth in UCC § 2–725(2) have their origins in pre-Code law. The pre-Code law in New York differentiated between a present and a prospective warranty. A present warranty related only to the condition of goods at the time of sale, and a cause of action for the breach of such a warranty accrued at the time of sale or delivery. *Munn v. Security Controls, Inc.*, 23 A.D.2d 813, 258 N.Y.S.2d 475 (4th Dept. 1965); *Kakargo v. Grange Silo Co.*, 11 A.D.2d 796, 204 N.Y.S.2d 1010 (2d Dept. 1960), *mot. for lv. to app. den.*, 8 N.Y.2d 711, 208 N.Y.S.2d 1026, 170 N.E.2d 834 (1960). A prospective warranty related to the future state of goods, and a cause of action for the breach of such a warranty accrued at the time the breach could have been discovered. *Woodworth v. Rice Brothers Co.*, 110 Misc. 158, 179 N.Y.S. 722 (S.Ct. Orleans Co.1920), *aff'd*, 193 App.Div. 971, 184 N.Y.S. 958, *aff'd*, 233 N.Y. 577, 135 N.E. 925 (1922).

---

**7.** The warranty causes of action for the injuries resulting from the prosthetic devices inserted on May 2, 1972 and October 12, 1972 would have been timely if they had been asserted in the original complaint, but allegations concerning injuries caused by these devices were first made in the amended complaint.

**8.** The physician's entry in the medical records for June 11, 1973, reads in part:
> The breast capsule was then opened with a knife blade and with blunt scissors. The prosthesis was delivered from the wound and extracted and emptied. It was replaced in the wound and filled to 250 c.c. of volume, with sterile saline.

The Court believes that a fair reading of this passage indicates that the old prosthesis was emptied after being extracted and was then re-inserted in Mrs. Holdridge's body. Moreover, the Court has compared this passage with the entries made for the earlier operations and observes that when a new prosthesis was inserted, an express reference to this fact was made while no such reference was made in the June 11, 1973 entry.

The New York Court of Appeals considered the accrual problem in breach of warranty actions in *Citizens Utilities Co. v. American Locomotive Co.*, 11 N.Y.2d 409, 230 N.Y.S.2d 194, 184 N.E.2d 171 (1962). The plaintiff in *Citizens Utilities* alleged that the defendant expressly and impliedly warranted that generating sets that it manufactured and sold to the plaintiff would be capable of continuous operation for thirty years. Chief Judge Desmond, writing for the court in an opinion joined by two other judges, said that these warranties were in effect a warranty as to present condition, characteristics, and design, since the warranties meant that the machines as they stood at the time of sale were so well built that they were capable of lasting for thirty years. Therefore, Judge Desmond concluded that a cause of action for breach of these warranties accrued at the time of sale. Judge Froessel concurred on other grounds in an opinion joined by the three judges who joined the court's opinion. Judge Fuld, in a dissenting opinion joined by two other judges, characterized the warranties in this case as prospective in nature and said that the cause of action for breach did not accrue until the machinery gave evidence of not operating properly. The dissent argued that implied, as well as express, warranties can be found to be prospective in nature when they relate to, or are contingent upon, a future event.

Since the adoption of the Uniform Commercial Code, only a few lower court cases in New York have considered the applicability of the exception to the normal accrual rule under UCC § 2–725(2). In *Mittasch v. Seal Lock Burial Vault, Inc.*, 42 A.D.2d 573, 344 N.Y.S.2d 101 (2d Dept. 1973), the plaintiff brought an action based on the alleged breach of an express warranty that the casket and burial vault in which her husband was buried "will give satisfactory service at all times." The court in *Mittasch* held that this warranty explicitly extended to future performance and so concluded that the cause of action accrued when the breach is or should have been discovered. In *Thalrose v. General Motors Corporation*, 8 UCC Rep.Serv. 1257 (S.Ct. N.Y.Co.1971),

the court held that express warranties that an automobile will work well for a two or five year period are not prospective in nature, but merely constitute a representation that, in its present condition, the automobile is capable of enduring use for such a period. In *Owens v. Patent Scaffolding Co.*, 77 Misc.2d 992, 354 N.Y.S.2d 778 (S.Ct. Kings Co.1974), *rev'd on other grounds*, 50 A.D.2d 866, 376 N.Y.S.2d 948 (2d Dept. 1975), the court held that an express warranty to repair did not explicitly extend to future performance. In both *Thalrose v. General Motors Corporation, supra* and *Owens v. Patent Scaffolding Co., supra*, the courts reached the same conclusion with regard to an implied warranty of merchantability.

Courts in a number of other jurisdictions have construed UCC § 2–725(2). A few courts have found an express warranty to extend explicitly to future performance within the meaning of this section. The court, in *Perry v. Augustine*, 37 Pa.D. & C.2d 416, 3 UCC Rep.Serv. 735 (C.P.1965), decided that an express warranty that a heating system would "be able to heat at 75° inside at a –20° outside temperature" explicitly extended to future performance where the heating system was delivered in the summertime, and discovery of a breach would necessarily have to wait until winter weather. In *Rempe v. General Electric Co.*, 28 Conn.Sup. 160, 254 A.2d 577 (1969), the court found that a "lifetime" warranty given on a disposal unit was prospective in nature. However, other courts have found particular express warranties not to extend explicitly to future performance. In *Binkley Co. v. Teledyne Mid-America Corporation*, 333 F.Supp. 1183 (E.D.Mo.1971), *aff'd*, 460 F.2d 276 (8th Cir. 1972), the court held that an express warranty that a welder could perform a precise number of welds per minute did not explicitly extend to future performance, because the warranty did not make any reference to future time. In *Voth v. Chrysler Motor Corporation*, 218 Kan. 644, 545 P.2d 371 (1976), the court held that an express warranty to repair or replace did not explicitly extend to future

performance. *See also Centennial Insurance Co. v. General Electric Co.*, 74 Mich. App. 169, 253 N.W.2d 696 (1977); *Raymond-Dravo-Langenfelder v. Microdot, Inc.*, 425 F.Supp. 614 (D.Del.1976). One set of commentators has said, with reference to UCC § 2–725(2): "it should be clear that this extension of the normal warranty period does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods." J. White & R. Summers, *Uniform Commercial Code* § 11–8, at 341–42 (1972). White and Summers state that an example of a warranty explicitly extending to future performance is a lifetime guarantee by a seller. *Id.*

While certain express warranties have been found to extend explicitly to future performance, most of the courts which have considered the question in the context of UCC § 2–725(2), have held that an implied warranty by its very nature cannot explicitly extend to future performance. *General Motors Corporation v. Tate*, 257 Ark. 347, 516 S.W.2d 602 (1974); *Voth v. Chrysler Motor Corporation, supra; Wilson v. Massey-Ferguson, Inc.*, 21 Ill.App.3d 867, 315 N.E.2d 580 (1974); *Buckland v. Mercury Outboard Center, Inc.*, 19 UCC Rep.Serv. 1159 (Mass.App.Div. 1976); *Owens v. Patent Scaffolding Co., supra; Thalrose v. General Motors Corporation, supra. Contra Hempfield Area Joint School Building Authority v. Tectum Corporation*, 2 UCC Rep. Serv. 518 (Pa.C.P.Westmoreland Co. 1964). Many of these courts looked to the dictionary definition of the word "explicit". *General Motors Corporation v. Tate, supra*, 516 S.W.2d at 606; *Wilson v. Massey-Ferguson, Inc., supra*, 315 N.E.2d at 583. The word "explicit" is defined as "being without vagueness or ambiguity: leaving nothing implied: unequivocal" and synonyms for the word "explicit" include "express", "specific", and "definite". *Webster's Third New International Dictionary* 801 (unabridged 1971). *See also* 1 Weinstein, Korn & Miller, *supra*, ¶ 213.5, at 2–247.

Plaintiffs cite a number of decisions from various jurisdictions which held that an implied warranty which relates to a future event is prospective in nature and so the period of limitations for breach of such a warranty should run from the date the breach is or should have been discovered. *See, e. g., Sampson Construction Co. v. Farmers Cooperative Elevator Co.*, 382 F.2d 645 (10th Cir. 1967); *Aced v. Hobbs-Sesack Plumbing Co.*, 55 Cal.2d 573, 12 Cal.Rptr. 257; 360 P.2d 897 (1961); *Hepp Brothers, Inc. v. Evans*, 420 P.2d 477 (Okl.1966); *Smith v. Continental Insurance Co.*, 326 So.2d 189 (Fla.App.1976); *Puretex Lemon Juice, Inc. v. S. Riekes & Sons of Dallas, Inc.*, 351 S.W.2d 119 (Tex.Civ.App.1961). However, these cases were decided either before the adoption of the UCC or upon the basis of non-Code provisions.

The express and implied warranties in the present case must be considered in light of the above authorities. In their amended complaint, plaintiffs claim that they relied upon express warranties that the defendant's product "was safe and fit for its intended use". Plaintiffs place special reliance upon express representations allegedly made by the defendant as to the contours and coloring of its products by means of illustrations, photographs, and textual descriptions. A photograph or illustration can be regarded as an express warranty by description if made part of the basis of the bargain. UCC § 2–313, Official Comment, Point 5. However, the express warranties allegedly made in this case do not appear to extend explicitly to future performance. In most of those cases in which there was found to be an express warranty explicitly extending to future performance, the warranty specifically made reference to future time, such as a "lifetime" warranty (*Rempe v. General Electric Co., supra*), or a warranty that a product would work satisfactorily "at all times" (*Mittasch v. Seal Lock Burial Vault, Inc., supra*). The court in *Perry v. Augustine, supra*, went somewhat further, but this case is against the weight of authority and its reasoning has been criticized. *See* J. White & R. Summers, *supra*, § 11–8, at 342. The express warranties allegedly made in the present case merely constitute a representation of the

product's condition at the time of delivery and do not make any reference to future time.

■ Plaintiffs contend that the defendant may have made additional express warranties to Joanne Holdridge's physician of which they are still unaware, but which they hope to ascertain during discovery. Plaintiffs suggest that some of these warranties might be regarded as explicitly extending to future performance. The Court will permit the plaintiffs to conduct discovery on this issue and, therefore, will not, at this time, decide whether the express warranty cause of action is time barred.[9]

■ On the other hand, the Court holds that an implied warranty, by its very nature, cannot explicitly extend to future performance. Therefore, the implied warranty cause of action is barred by the statute of limitations with respect to all injuries being alleged.

## ESTOPPEL

In addition to the arguments already considered, the plaintiffs contend that the defendant is estopped to raise the statute of limitations as a defense. This argument, if accepted by the Court, would apply to all the causes of action being asserted by the plaintiffs, but, as a practical matter, would be significant only with respect to the warranty causes of action since the Court has already held that the negligence and strict products liability causes of action are not time barred.

■ Plaintiffs claim that the defendant has fraudulently concealed information as to the defectiveness of its product and is, therefore, estopped to assert the statute of limitations. As a general rule, the failure

of a potential defendant to advise a potential plaintiff of the existence of a cause of action does not "amount to a concealment so as to estop defendant from pleading the statute of limitations". *Clark v. New York Telephone Co.*, 52 A.D.2d 1030, 384 N.Y.S.2d 562, 563 (4th Dept. 1976), aff'd 41 N.Y.2d 1069, 396 N.Y.S.2d 177, 364 N.E.2d 841 (1977). However, the courts in New York have recognized that, in certain limited circumstances, a defendant's fraudulent concealment of his wrongdoing may serve to bar him from raising the statute of limitations as a defense. For example, in *General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 272 N.Y.S.2d 337, 219 N.E.2d 169 (1966), the court held that the plaintiff should be allowed to raise the question of equitable estoppel at trial to prevent the defendant, from relying upon the statute of limitations where the defendant, employed by the plaintiff as head bookkeeper, had embezzled funds over a nine-year period and had manipulated the books to conceal the thefts. See also *Erbe v. Lincoln Rochester Trust Co.*, 13 A.D.2d 211, 214 N.Y.S.2d 849 (4th Dept. 1961); *Dodds v. McColgan*, 229 App. Div. 273, 241 N.Y.S. 584 (1st Dept. 1930).

For the most part, the New York courts have been reluctant to expand the fraudulent concealment doctrine. They have generally refused to apply it to malpractice actions against professionals where it has been alleged that the professional fraudulently concealed his negligence. It has been said that the alleged concealment is directly connected to the malpractice and is, therefore, an integral part of the malpractice cause of action. *Simcuski v. Saeli*, App. Div., 395 N.Y.S.2d 776 (4th Dept. 1977); *Kleinman v. Lack*, 6 A.D.2d 1046, 179 N.Y. S.2d 194 (2d Dept. 1958); *Tulloch v. Haselo*,

9. Even though the plaintiffs were not aware of any such warranties at the time of sale and so could not have relied upon them, they might be able to establish a cause of action for breach of express warranty if their discovery reveals that warranties explicitly extending to future performance were made to Joanne Holdridge's attending physician and were relied upon by him in purchasing the product. In order to recover for breach of express warranty, a party must normally show that he relied upon the warran-

ty in making the purchase, but in appropriate circumstances, a physician can serve as a patient's agent for purposes of reliance. *Friedman v. Medtronic, Inc.*, 42 A.D.2d 185, 345 N.Y.S.2d 637 (2d Dept. 1973). (An injured party might also be able to recover on a third party beneficiary theory under UCC § 2–318, but the present version of this provision was not enacted in New York until after the cause of action in this case arose and so is not applicable here.)

218 App.Div. 313, 218 N.Y.S. 139 (3d Dept. 1926).

 This Court is of the opinion that the New York courts would not apply the fraudulent concealment doctrine to an action against a manufacturer of an allegedly defective product. The essence of the present action is that the defendant has manufactured a defective product which has injured the plaintiffs. The alleged fraudulent concealment of the defects is not a separate and independent wrong, but is directly connected to the defendant's introduction of a defective product into the stream of commerce.

 Plaintiffs also contend that the defendant is estopped to assert the statute of limitations by breaching its duty to warn of defects which it may have subsequently discovered. While a manufacturer has a duty to warn of defects in its products that come to its attention, *Braniff Airways, Inc. v. Curtiss-Wright Corporation*, 411 F.2d 451 (2d Cir. 1969), this Court does not believe that the existence of such a duty will serve to toll the running of the statute of limitations on a cause of action for a wrong which has already been committed. The wrong in this case was committed when the allegedly defective prosthetic devices were implanted in Joanne Holdridge's body. The court in *Schwartz v. Heyden Newport Chemical Corporation*, supra, 12 N.Y.2d at 216, 237 N.Y.S.2d at 716, 188 N.E.2d at 143 stated:

> the bar of the Statute of Limitations cannot be avoided through an allegation that defendant had a continuing duty to warn of the possible damaging consequences resulting from the act alleged to be negligent.

Hence, the Court holds that the defendant is not estopped to assert the statute of limitations as a defense.

## CONCLUSION

The Court, finding that the defendant will not be prejudiced, will allow the plaintiffs to amend their complaint. The Court decides that, with respect to injuries resulting from the prosthesis implanted in Joanne Holdridge's right breast on July 6, 1971, the new theories of recovery alleged in the amended complaint will relate back to the date that the original complaint was filed, but that the allegations contained in the amended complaint regarding injuries resulting from additional prosthetic devices implanted in Mrs. Holdridge's body will not relate back.

The Court holds that the strict products liability and negligence causes of action did not accrue until the termination of the continuous treatment of Joanne Holdridge's attending physician and, therefore, can be maintained for injuries resulting from all the prosthetic devices implanted in Joanne Holdridge's body.

In addition, the Court decides that the implied warranty cause of action accrued at the time each prosthetic device was originally inserted in Mrs. Holdridge's body and, therefore, finds that the implied warranty cause of action is barred by the statute of limitations with respect to all injuries being alleged. Finally, the Court will not, at this time, decide if the express warranty cause of action is time barred and will allow the plaintiffs to conduct discovery to determine whether the defendant has made any express warranties to Mrs. Holdridge's attending physician which could be regarded as explicitly extending to future performance.

Accordingly, plaintiffs' motion for leave to amend their complaint is granted. Defendant is ordered to serve an answer to the amended complaint within twenty days of its receipt of this decision. Defendant's motion for summary judgment is granted with respect to the implied warranty cause of action, but is denied in all other respects.

It is so ordered.